

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD–0486–10

**THOMAS PAUL TUCKER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### KERR COUNTY

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. ALCALA, J., filed a concurring opinion in which KELLER, P.J., joined. WOMACK, J., concurred.

### O P I N I O N

Appellant, Thomas Paul Tucker, was charged by information with possession of two ounces or less of marijuana within 1,000 feet of a drug-free zone in violation of Texas Health and Safety Code §§ 481.121 and 481.134(f). Appellant filed two pre-trial motions to suppress, which were denied following a hearing. Appellant pled *nolo contendere*, and the trial court found him guilty. He was sentenced to ninety days'

confinement and a $1,000 fine. The Fourth Court of Appeals affirmed the trial court's ruling, holding that there was sufficient evidence in the record to support the trial court's implied findings. *Tucker v. State*, No. 04-09-00046-CR, 2010 Tex. App. LEXIS 5922, *9-10 (Tex. App.–San Antonio July 28, 2010) (mem. op., not designated for publication). We granted Appellant's petition for discretionary review to consider whether the court of appeals erred in upholding the trial court's implicit finding that Appellant's consent to the search of his residence was voluntary. Because the court of appeals failed to evaluate all of the evidence that was admitted into the record by the trial court, we will reverse and remand the case to the court of appeals.

**Facts and Suppression Hearing**

Officers received an anonymous tip that Appellant was selling marijuana from his house. The following day, an officer began surveillance of Appellant's residence in an effort to corroborate the anonymous report. After about an hour and a half of surveillance, the officer saw Appellant leave his home in a white van. The officer followed Appellant in an unmarked car and observed him fail to use a turn signal when making a right-hand turn. In response, she directed Officer Byron Griffin, who was positioned on the highway in a marked unit, to stop Appellant for the traffic violation. Testimony at the suppression hearing indicated that the officers hoped they would "gain some kind of probable cause" from the traffic stop that would allow them to search Appellant's residence.

The stop was recorded by an on-board camera in Officer Griffin's car. When Griffin pulled Appellant over, another officer, Deputy Johnson, arrived at the scene to assist him. Griffin testified that Appellant could not drive away unless both police cars were moved. Griffin instructed Appellant to exit the van, and Appellant acquiesced, leaving the vehicle running. When Appellant exited the van, he informed Griffin that his son was inside. Griffin stated that it was his usual practice to get everyone out of a vehicle during a traffic stop. However, he told Appellant to leave his son in the car and stated, "This is only going to take a second."

Appellant produced his driver's license and informed the officer that his insurance information was in the glove box. Griffin testified that Appellant appeared nervous, his face was trembling, and he placed his hands in his pockets. Griffin patted Appellant down and found nothing. Appellant then asked the officers if he could remove his son from the van because it was a hot day, and the van did not have air conditioning. The officers answered that the stop would not take long, and told Appellant that his son could remain in the vehicle. Griffin wrote Appellant a warning citation for the turn-signal violation and returned Appellant's driver's license to him. The citation was issued approximately seven minutes after the initial stop. Griffin then asked Appellant if the vehicle contained any contraband. Appellant responded that it did not. Griffin asked to search the vehicle, and Appellant consented.

Deputy Johnson conducted a search, and, according to Griffin, immediately

noticed "shake," or small pieces of marijuana, on the passenger's side floorboard. Appellant was handcuffed and informed that he was being detained for possession of marijuana. Griffin patted down Appellant a second time, but found nothing. Griffin informed Appellant that if he was taken to jail with "anything on him," he could be charged with a felony. Griffin then asked Appellant if he had any marijuana in the crotch of his pants, and Appellant responded no. Griffin asked Appellant whether he had any marijuana in his shoes, and Appellant admitted that there was marijuana in his shoe. Griffin directed Appellant to remove his shoes, and recovered a small plastic bag containing 10.21 grams of marijuana. The officers searched, but found nothing further on Appellant's person or in his vehicle. Appellant testified that he requested that his son be removed from the van several times, but that the officers left him in the vehicle for the entire stop, approximately thirty-six minutes.

After discovering and seizing the marijuana from Appellant's shoe, Griffin informed Appellant that they had information that he was selling marijuana from his residence. Griffin asked Appellant for consent to search his residence. Appellant asked Griffin to contact his wife to pick up their son from the scene. Griffin denied Appellant's request and responded that they "needed to accomplish one thing at a time," and he "didn't want more people showing up on the scene because it becomes an officer safety issue." Griffin again asked for consent to search Appellant's home, and according to Griffin's testimony, Appellant said he would consent if Griffin would take his son back to

his residence.  Officers searched Appellant's residence and discovered an additional misdemeanor quantity of marijuana.

At the pretrial suppression hearing, Appellant sought to have the marijuana that was seized from his vehicle and home suppressed for lack of voluntary consent to search. Griffin and Appellant both testified at the hearing and the State entered into evidence the video recording of the stop.  The trial judge stated several times that he would not watch the video but admitted it for the record.  The trial court denied the motions to suppress. Appellant pled *nolo contendere*, and the court found him guilty of possession of less than two ounces of marijuana in a drug-free zone.

**The Court of Appeals**

At the Fourth Court of Appeals, Appellant challenged the trial judge's decision to deny his motions to suppress.  Specifically, Appellant complained that his consent to the search of his vehicle, and his later consent to the search of his residence, were "fruits" of an unlawful and prolonged detention.  Appellant also complained that both instances of consent were coerced, given under duress, and involuntary.  Appellant concluded that,

> Had the trial court viewed the video, it might well have had a different view of the evidence.  Had the court viewed the video, it would have learned that Mr. Tucker repeatedly asked to have his son removed from a hot vehicle, to no avail.  The court would have seen that the State could not prove by clear and convincing evidence that Mr. Tucker's consents to the searches of his van and home were free of the taints of police officer coercion and duress. The court's decision not to view the video was its own.  The court reversibly erred in denying Mr. Tucker's motion to suppress.

In response, the court of appeals noted that Appellant admitted to voluntarily

consenting to the search of his vehicle at the suppression hearing. *Tucker*, 2010 Tex. App. LEXIS 5922, at *8. Furthermore, the court of appeals determined that Appellant gave his consent to search the vehicle within a short time after being stopped (within ten minutes), which suggested that he was not under duress, and that the officers did not repeatedly refuse to remove Appellant's son from the van before procuring Appellant's consent to search. *Id*.

The court of appeals also concluded that Appellant was justifiably stopped for a turn-signal violation and that the record supported that Appellant verbally consented to the search of his van within two minutes of the issuance of the citation. *Id*. at *6-7. The court of appeals said that the tone of Griffin's request, "You don't mind if I take a look, do you?," did not convey that consent was mandatory. *Id*. at *7.

In determining whether the trial court erred in denying Appellant's motions to suppress, the court of appeals set out the bifurcated standard of review articulated in *Guzman v. State*, which stated that appellate courts should afford "almost total deference to the trial court's determination of the historical facts that the record supports," and review *de novo* the trial court's application of the law of search and seizure. *Id*. at *5 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The court of appeals stated that:

> The trial court was faced with the conflicting testimony of Tucker's assertion that the officers used his son "as a pawn" to obtain consent to search the residence, and Officer Griffin's adamant denial of such allegations. Because an appellate court affords the trial court almost

complete deference in its determination of historical facts, especially those based on an assessment of credibility and demeanor, we conclude there is sufficient evidence in the record to support the trial court's implied finding that Tucker knowingly, intelligently, and voluntarily consented to the search of his residence.

*Tucker*, 2010 Tex. App. LEXIS 5922, at *9-10. The court of appeals affirmed the trial court's denial of Appellant's motions to suppress.

**Arguments of the Parties**

Appellant asserts that the court of appeals erred in ignoring the on-board video because it represented an account of the historical facts that did not turn upon the credibility or demeanor of the witnesses. Appellant also contends that the court of appeals evaluated the evidence under the wrong standard of review. Appellant asserts that the court of appeals failed to evaluate the totality of the circumstances or to establish whether the State had borne its burden of proving by clear and convincing evidence that Appellant's consent to the search of his residence was voluntarily given. Instead, Appellant maintains, the court of appeals incorrectly concluded that the evidence was "sufficient" to support a finding of voluntary consent.

The State argues that Appellant's consent to search his vehicle was voluntary based on the following factors: (1) Appellant never asked to leave after receiving his citation, (2) the record did not state that Appellant was told he was required to consent to the search of his vehicle, and (3) less than five minutes after Appellant gave consent to search the van, Deputy Johnson discovered marijuana in the vehicle.

Because Appellant's ground for review is based on the voluntariness of the search of his residence, the State contends that Appellant focuses on an event that does not relate to his conviction for possession of two ounces or less of marijuana within 1,000 feet of a drug-free zone. The State maintains that Appellant ignores the facts that led up to his arrest and instead focuses on the search of his residence, which occurred after he was arrested. The State argues that we should disregard Appellant's issue because it relates to the drugs seized at his residence.

**Discussion**

### Standard of Review

In reviewing a trial court's ruling on a motion to suppress, appellate courts must afford great deference to the trial court's findings of historical facts as long as the record supports those findings. *Guzman*, 955 S.W.2d at 89. An appellate court affords "almost total deference to a trial court's determination of historical facts" and reviews *de novo* the court's application of the law of search and seizure. *Id*. When the trial court does not make findings of fact, appellate courts view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings "that buttress its conclusion." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). In *Montanez v. State*, 195 S.W.3d 101, 108 (Tex. Crim. App. 2006), we stated that "The issue is whether, after affording almost total deference to the trial court's determination of historical facts that are supported by the record, the trial court abused its discretion by

finding that the State proved by clear and convincing evidence that [the appellant] voluntarily consented to the search of the vehicle." We also discussed our "somewhat unclear" precedent regarding standards of review in order to decide which standard under *Guzman*, deferential or *de novo*, was appropriate to apply to video evidence. *See Montanez*, 195 S.W.3d at 108.

In *Carmouche*, we declined to give "almost total deference" to the trial court's implicit finding of voluntary consent because "the nature of the evidence presented in the videotape does not pivot 'on an evaluation of credibility and demeanor.' Rather, the videotape provided indisputable visual evidence contradicting essential portions of [the officer's] testimony." *Carmouche v. State,* 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) We held that the record did not support the court of appeals's determination that the voluntariness of the appellant's consent was supported by clear and convincing evidence. *Id*.

We subsequently held that a deferential standard of review applies to a trial court's determination of historical facts when that determination is based solely upon affidavits. *Manzi v. State*, 88 S.W.3d 240 (Tex. Crim. App. 2002). We decided that *Guzman* "did not purport to hold that historical fact issues could be reviewed *de novo* if credibility and demeanor considerations were absent." *Manzi*, 88 S.W.3d at 243. We came to this conclusion because our holding in *Guzman* heavily relied on a United States Supreme Court case, which held that "appellate courts should review a trial court's determination

of historical facts under a deferential standard, even if that determination was *not* based upon an evaluation of credibility and demeanor." *Manzi*, 88 S.W.3d at 243 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)).

Finally, we held in *Montanez* that appellate courts should apply the deferential standard articulated in *Guzman* "to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing." *Montanez*, 195 S.W.3d at 109. The case before us differs from *Montanez* in that the video was admitted into evidence but was not viewed by the trial court, and was therefore not used as the basis for any findings, determinations, or rulings. Despite this distinction, deference is still the correct standard to use here. However, in order to determine whether the evidence supports the trial court's implicit finding, the court of appeals must take all of the evidence, including the video, into account.

The court of appeals should view the video in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings that support the denial of Appellant's motion to suppress. If the video evidence does not support the trial court's conclusion, then the court of appeals should reverse.

**Voluntariness of Consent**

Under the Fourth Amendment, a search is unreasonable when conducted without a warrant or probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A search conducted pursuant to consent, however, is specifically excepted from this general

rule. *Id*. *Schneckloth* stated that "two competing concerns must be accommodated in determining the meaning of a 'voluntary' consent – the legitimate need for such searches and the equally important requirement of assuring the absence of coercion." *Id*. at 227.

In determining whether a defendant's will was overborne in a particular case, the trial court must assess the totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence. *Meekins v. State*, 340 S.W.3d 454, 458-59 (Tex. Crim. App. 2011). *See also Schneckloth*, 412 U.S. at 226 (circumstances to consider include both the characteristics of the accused and the details of the interrogation.) Consent coerced by any explicit or implicit means is "no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Id*. at 228.

Factors to be considered in evaluating whether consent was voluntary include: whether the accused was advised of his constitutional rights,[1] the length of the detention, whether the questioning was repetitive or prolonged, whether the accused was aware that he could decline to answer the questions, and what kind of psychological impact the questioning had on the accused. *Schneckloth,* 412 U.S. at 226-27. If, after considering the totality of the circumstances, the trial court determines that the consent was involuntary, i.e., that it was coerced by threat or force, given under duress, or given only in submission to a claim of lawful authority, then the consent was invalid, and the search

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 468-69 (1966).

was unreasonable. *Id*. at 233.

In the case before us, there was conflicting testimony regarding some of these factors, and an evaluation of the totality of the circumstances should include a viewing of the video to determine whether the trial court's ruling is supported by the evidence.

**Conclusion**

Because the court of appeals erred in upholding the trial court's implicit finding that Appellant's consent was voluntary without evaluating all of the evidence that was admitted into the record by the trial court, we reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

Meyers, J.

Delivered: June 20, 2012

Publish