

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-09-00046-CR

Thomas Paul **TUCKER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR08-11125
Honorable Spencer W. Brown, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting en banc:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 29, 2013

I dissent to the denial of en banc reconsideration without requesting a response.

Initially, I express disapproval of the officer's admitted use of a minor traffic infraction to circumvent the lack of probable cause requirement for a warrant to search Tucker's home.  Once the citation was given pursuant to a valid traffic stop, it was illegal for the officers to further detain Tucker and to ask whether he had drugs in his vehicle.  Although, as the majority notes, Tucker waived his challenge to the search of his vehicle, the majority fails to consider the

"totality of the circumstances" on the issue of voluntariness of the consent to search Tucker's home by disregarding the illegality of the subsequent detention and arrest, as well as the conduct of the officers who, by their own admission, were motivated to gain access to Tucker's home. While deferring to an implicit finding that the trial court chose to believe Tucker's statement that his consent was "voluntary," along with Officer Griffin's denial that he used Tucker's son to coerce consent, the opinion's analysis fails to consider "the totality of the circumstances." After remand, the opinion offers an additional summary of events reflected in the video, viewed in the light most favorable to the trial court's implied findings based on the credibility of the witnesses; however, the record does not support, nor must we accept, an implicit finding that Tucker's consent followed a valid detention and arrest. Notwithstanding, I disagree that the totality of the circumstances shows that Tucker's consent was made voluntarily. Lastly, I agree with Judge Alcala that "these are determinations properly left to the trial court as the fact finder" and that further remand to the trial court might be required. *Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (Alcala, J., concurring) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75 (1985)); *see also U.S. v. Guzman*, 864 F.2d 1512, 1520 (10th Cir. 1988) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (district court made no findings of fact on the issue of consent, which is a question of fact requiring remand to the trial court)).

In determining whether the officer's conduct was "coercive" under the "totality of the circumstances," we should consider the following facts: (1) the ultimately uncorroborated "tip" from an "anonymous source;" (2) the admittedly pre-textual traffic stop; (3) the illegal post-citation detention; (4) the continued absence of probable cause to search the home; and (5) the nature and conduct of the officers' "investigation" and interrogation which they pursued to obtain the consent to search Tucker's home. Absent from the record is even a scintilla of

evidence derived from the initial traffic stop and subsequent search to indicate the officers had developed a reasonable suspicion that another violation was ongoing, particularly at Tucker's home, to warrant further detention and repeated questioning of Tucker for consent to search his home.

The record shows that, on the day before the stop and search, Officer Hicks received an anonymous tip that Tucker was selling marijuana from his home. The next day, Hicks conducted surveillance on the residence in an effort to corroborate the anonymous report for approximately one and one-half hour before he saw Tucker drive away in a white van and fail to use a turn signal. Instead of continuing the surveillance and developing sufficient information to establish probable cause to obtain a warrant to search Tucker's house, Hicks instructed Officer Griffin to stop Tucker for the minor traffic violation, as previously planned. Both Hicks and Griffin were members of the Kerr County Sheriff's Narcotics Division. It is undisputed that the officers stopped Tucker hoping to gain probable cause to search the home.[1] When Tucker first exited the van, he left the driver's side door open and informed Griffin that his young son was inside the van. Griffin indicated the stop would be brief and told Tucker to leave his child in the van. As soon as Tucker provided his driver's license to Griffin, he was patted down and then asked for consent to search for weapons around the child. After Griffin patted down Tucker and found nothing, Tucker asked if he could remove his son from the van because it had no air conditioning and it was a hot day. Griffin again told Tucker to leave his son inside the van because the stop would not take long, even though his usual practice is to get everyone out of a vehicle during a traffic stop. The State did not articulate any facts to support a *Terry* pat-down search or safety-

---

[1] Officer Griffin admitted at the suppression hearing that the officers' ultimate goal in making the traffic stop was to gain access to search Tucker's residence. Griffin testified that the officers "hoped they would 'gain some kind of probable cause' from the traffic stop that would allow them to search Appellant's residence." *Tucker*, 369 S.W.3d at 181.

based request to search for weapons. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also Glazner v. State*, 175 S.W.3d 262, 265 (Tex. Crim. App. 2005) (pat-down permissible if officer believed suspect was armed).

Indeed, it is more likely that the officers hoped to find evidence of drugs to give them probable cause to continue the search, as hoped, or to otherwise achieve a "plain-view" exception to the exclusionary rule.[2] Immediately after handing Tucker his traffic citation seven minutes into the initial stop, Griffin asked Tucker if he had any drugs in the vehicle; Tucker responded "no," but was asked nonetheless for consent to search the vehicle. Again, absent from the record are articulated facts or circumstances derived from those seven minutes suggesting to the officers that Tucker committed any crime more serious than failing to use a turn signal or, more particularly, was trafficking drugs from his home. Once an officer has resolved the initial basis for the traffic stop and given the driver a warning or citation, any continued detention is presumptively unreasonable without different information to justify the ongoing detention (e.g., facts supporting suspicion of drug trafficking). *See U.S. v. Jenson*, 462 F.3d 399, 407-08 (5th Cir. 2006) (officers must ask for a driver's consent to search before concluding other reasons for the stop); *U.S. v. Brigham*, 382 F.3d 500, 508-09 (5th Cir. 2004) (en banc) (consent to search obtained while waiting for computer background check, therefore not "involuntary"); *U.S. v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001) (detention beyond time needed to write the citation unreasonable); *U.S. v. Shabazz*, 993 F.2d 431, 442 (5th Cir. 1993) (conflicting answers to police questioning and nervousness led officers to seek consent to search car); *Guzman*, 864 F.2d at 1519 (officer may not question driver about drugs after investigation for failure to wear seat belt is complete). Hence, the record fails to support the trial court's implied finding that the officers had a *reasonable suspicion derived from the initial traffic stop* to detain Tucker after issuing the

---

[2] The State neither urged nor proved an exception to the exclusionary rule.

traffic citation or to question Tucker about drugs.  *Cf. Goudeau v. State*, 209 S.W.3d 713, 719-20 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (after stop for suspicion of license-plate violation, suspect's bloodshot eyes, slurred speech, fumbling for insurance papers and an open container of alcohol on seat beside suspect gave rise to reasonable suspicion that suspect had been driving while intoxicated).

Further, after the officers claimed to find a "shake" of marijuana on the floorboard of the passenger side of the vehicle, Tucker was thereafter handcuffed and asked to disclose any more drugs before being taken to jail; he disclosed a small amount of marijuana in his shoe.  He was thereafter questioned at the scene for approximately seventeen minutes, during which time officers negotiated and threatened Tucker for consent to search his home.  The record reflects that Tucker remained in handcuffs for the remaining time, but does not reflect that Tucker was advised of his constitutional rights or could reasonably believe he could decline further questioning.  Any argument that the officers suspected Tucker was transporting drugs was quickly dispelled after a search of the vehicle and his person revealed only a small misdemeanor amount of marijuana.  The officers' detention continued until finally obtaining Tucker's consent to search his home, where they found a small misdemeanor amount of marijuana.

We must consider from the totality of the surrounding circumstances the characteristics of the accused, along with the details of the interrogation.  *See Schneckloth*, 412 U.S. at 226. The record, including the videotape, reflects that Tucker exhibited characteristics that an objectively reasonable person would view as one under duress—he was detained and repeatedly expressed concern for his young son, from his exit from the van after the initial stop to even after the marijuana was found in his shoe.  Tucker's repeated requests regarding his son during his detention, sincere or not, clearly fueled the officers' mode of interrogation to include threats to

call Child Protective Services ("CPS") and refusing to allow the mother to retrieve the child from the scene. Contrary to the majority opinion, the fact that the entire stop lasted for only thirty-six minutes and that the child was removed from the van at thirty-two minutes, does not mean an objectively reasonable person, with no foreshadowing to know *when* the stop would end or *if* the child would be released from the van, would not feel mental and emotional duress under these circumstances. As the Supreme Court made clear in *U.S. v. Sharpe*, 470 U.S. 675, 685-87 (1985), the basis for and the circumstances surrounding the stop, rather than an arbitrary time limit, govern the stop's permissible length. Here, the detention, however brief, unreasonably extended beyond the length necessary for its only legitimate purpose—the issuance of a citation or warning for a turn signal violation.

In addition, the fact that the officers explicitly tied one action—Tucker giving consent to a search of his home—to another action—whether they would call CPS if forced to get a search warrant, tends to suggest the officers were well aware of the coercive effect of the presence of Tucker's child, whether inside the van or not. Griffin admitted at the suppression hearing that Tucker attempted to negotiate his consent on the condition that his son be taken to his home. Ultimately, Tucker's refusing consent until given conditionally cannot reasonably be deemed as voluntary in the legal sense. Furthermore, significant intervening circumstances occurred during those "seventeen minutes"—(1) the officer refused to allow Tucker to call his wife to pick up their son, claiming an "officer safety issue"[3] if more people came to the scene; (2) Tucker repeatedly expressed concern for his son and asked officers to remove his son from the hot van; (3) the officers stated that they "would not call CPS" if Tucker allowed a search of his home without the requirement of a warrant; and (4) after thirty-two minutes following the initial stop,

---

[3] The evidence, particularly the videotape, reflects no particular actions taken by the officers tending to corroborate a "safety concern," especially after Tucker was handcuffed and immediately placed in the patrol car.

the officers removed the child from the van only after consent was obtained from Tucker.  I believe these undisputed facts, taken as a whole, can only be characterized as coercive words and actions by the officers employed to circumvent the Fourth Amendment.

Lastly, by giving total deference to the testimony of a witness, who either denies coercion or states his consent was voluntary, the majority suggests that testimonial evidence alone can be determinative in our review and implies each witness used "coercion" and "voluntary" in the legal sense to which deference should be given.  I believe a reasonably objective person could only conclude that, once Tucker was handcuffed without warnings or any indication he could decline further questioning, together with the officers' prolonged detention and repetitive questioning following a valid yet pre-textual traffic stop and arrest for a misdemeanor offense, the totality of the circumstances do not indicate an absence of coercion.  In this case, the officers' actions yielded "consent" before reasonable suspicion, much less probable cause, existed to justify the officers' actions.  Most importantly, contrary to the majority opinion, it is the burden of the State to prove a lack of coercion from an objective point of view; the burden is not on Tucker to prove he was in fact coerced from a subjective one.  *See Tucker*, 369 S.W.3d at 185; *see also Meekins v. State*, 340 S.W.3d 454, 458-59 (Tex. Crim. App. 2011) (trial court must assess the totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence).  "Consent coerced by any explicit or implicit means is 'no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.'"  *Tucker*, 369 S.W.3d at 185 (quoting *Schneckloth*, 412 U.S. at 228).  Guided by the highest court, the Court of Criminal Appeals reiterated that, "two competing concerns must be accommodated in determining the meaning of a 'voluntary' consent—the legitimate need for such searches and the equally important requirement of

assuring the absence of coercion." *Tucker*, 369 S.W.3d at 185 (quoting *Schneckloth*, 412 U.S. at 227).  The opinion gives no weight to the evidence of *why* the officer initiated the traffic stop, nor expresses concern with what the officers did—conduct and unreasonably prolong a routine traffic stop to detain, question and search for evidence at a person's home when the officer lacked any legal basis to do so, or to assess appropriate weight against the State for the lack of warnings given.

In conclusion, I dissent to the majority opinion because I believe it provides an insufficient analysis of the "totality of the circumstances" standard on the issue of voluntariness. I believe the record, including the videotape, reflects evidence of police conduct which a reasonably objective person could only view as coercive.  Even if the officers had requested Tucker's consent to search his van before giving him his citation, my view of the totality of the circumstances in determining the issue of the voluntariness of consent remains the same.

Rebeca C. Martinez, Justice

PUBLISH