ACCEPTED
06-14-00138-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/4/2015 9:45:08 AM
DEBBIE AUTREY
CLERK

**NO. 06-14-00138-CR**

IN THE COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS

TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/4/2015 9:45:08 AM
DEBBIE AUTREY
Clerk

JAIME LEE BLEDSOE, APPELLANT

VS.

THE STATE OF TEXAS, APPELLEE

APPEALED FROM THE 71ST DISTRICT COURT

HARRISON COUNTY, TEXAS

TRIAL COURT NO. 12-0374X

**APPELLEE'S BRIEF**

Jonathan Hyatt
Assistant District Attorney
State Bar No. 24072161
Harrison County District Attorney's Office
200 West Houston Street
Marshall, Texas 75670
Telephone: 903 935-8408
Facsimile: 903 938-9312
jonh@co.harrison.tx.us

ATTORNEY FOR APPELLEE
STATE OF TEXAS

1

**IDENTITY OF PARTIES AND COUNSEL**

Appellant:
    Jamie Lee Bledsoe, Inmate #1945574
    Wynne Unit
    810 FM 2821
    Huntsville, Texas 77349

Appellant's Standby Trial Counsel
    Cheryl Cooper-Sammons
    P.O. Box 8517
    Marshall, Texas 75671

State's Trial Counsel
    Shawn Connally
    Harrison County District Attorney's Office
    P.O. Box 776
    Marshall, Texas 75670

Trial Judge
    Hon. Brad Morin
    71st Judicial District Court
    200 West Houston, Suite 219
    Marshall, Texas 75670

Appellant's Counsel on Appeal
    Ebb Mobley
    P.O. Box 2309
    Longview, Texas 75606

State's Counsel on Appeal:
    Jonathan Hyatt
    Harrison County District Attorney's Office
    P.O. Box 776
    Marshall, Texas 75670

**TABLE OF CONTENTS**

Cover Page                                              1

Identity of Parties and Counsel                         2

Table of Contents                                       3

Index of Authorities                                    4

Issues Presented                                        6

Statement of the Case                                   7

Statement of Facts                                      8

Issue One:  The enhancement of Appellant's punishment
complies with statutory guidelines and is therefore
legally valid.                                         10
     Standard of Review                                10
     Statutory Framework                               11
     Argument                                          12

Issue Two:   Searches conducted and evidence seized
from the motel room used against the Appellant at trial
were legally obtained and did not violate Appellant's
Fourth Amendment Rights                                16
     Standard of Review                                16
     Warrants/Consent in Question                      17
     Law Enforcement Legally Justified to Seize Shirt
     Without Warrant                                   17
     Appellant Consent to Search                       20
     Warrant Errors Insufficient to Invalidate Warrant 24

Prayer for Relief                                      27

Certificate of Compliance                              28

Certificate of Service                                 28

**INDEX OF AUTHORITIES**

**Case Law**

*Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991)   10

*Carmen v. State*, 358 S.W.3d 285 (Tex.Crim.App.2000)   18

*Harris v. State*, 359 S.W.3d 625, 629 (Tex.Crim.App. 2011)                                               10

*Horton v. California*, 496 U.S. 128 (1990)         18

*Jones v. State*, 914 S.W.2d 675 (Tex.Ct.App.-Amarillo 1996)                                          24,25,26

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1978)    20,21

*State v. Dixon*, 206 S.W.3d 587 (Tex.Crim.App. 2006)                                                 16,17

*Tucker v. State*, 369 S.W.3d 179 (Tex.Crim.App.2012)   21

*United States v. Gordon*, 901 F.2d 48 (5th Cir. 1990)   24

*United States v. Jackson*, 131 F.3d 1105 (4th Cir. 1997)                                               18

*Valtierra v. State*, 310 S.W.3d 442 (Tex.Crim.App. 2010)                                                 16

*Walter v. State*, 28 S.W.3d 538 (Tex.Crim.App. 2000)   18

*Yazdchi v. State*, 428 S.W.3d 831 (Tex.Crim.App. 2014)                                                 10

**Statutes**

Tex. Const., Art I, Sect. 9                              21

Tex. Penal Code Sect. 12.35(a) (Vernon 2011)    11,14,15

Tex. Penal Code Sect. 12.42(a)(2) (Vernon 2007)        15

Tex. Penal Code Sect. 12.425(b)(Vernon 2011)11,12,14,15

**ISSUES PRESENTED**

**ISSUE ONE:** The enhancement of Appellant's punishment complies with statutory guidelines and is therefore legally valid.

**ISSUE TWO:** Searches conducted and evidence seized from the motel room used against the Appellant at trial were legally obtained and did not violate Appellant's Fourth Amendment rights.

## STATEMENT OF THE CASE

The Appellant was charged by indictment with the offense of Burglary of a Building (CR-2).  A Suppression Hearing was conducted on April 14, 2014 (RR Vol. 2).  The State filed a *State's Notice of Intent to Seek Enhanced Punishment Due to Prior Conviction* on May 8, 2014, alleging prior convictions in cause number 99-0124x and 08-177x(CR 138-9).  Voir dire commenced on July 21, 2014 with the trial on merits beginning immediately afterwards (RR Vol.3).  At the conclusion of the guilt/innocence phase, the Appellant was found guilty (CR-224).  The punishment phase began and the Appellant pled "Not True" to the enhancement allegations (5 RR 18-19).  At the conclusion of the punishment phase, the jury found the enhancements to be true and sentenced the Appellant to 20 years in the Institutional Division of the Texas Department of Criminal Justice with a $10,000 fine (CR-224).

**STATEMENT OF FACTS**

On July 16, 2012, Brad Horn, the Manager at Fish & Still Equipment arrived at work to discover that a Burglary had occurred at his place of business(3 RR 100). Horn called law enforcement and upon reviewing surveillance material, the investigating officers recognized the Defendant (3 RR 127). Officers investigated the crime scene and went by neighboring businesses, discovering additional surveillance videos with an individual that they identified as the Defendant at a time that was proximate to the alleged Burglary (3 RR 118). After securing an arrest warrant, officers with the Marshall Police Department scoured local motels and eventually discovered that the Defendant was staying at the local Motel 6 (3 RR 135). Officers went to the motel where the Defendant was residing, knocked on his door, and when he answered they arrested him on a felony warrant and secured the premises (3 RR 120). While arresting the Defendant, law enforcement saw in plain view a shirt on the floor

of the Defendant's motel room that matched the shirt the alleged burglar was wearing on the videos they had previously seen (3 RR 140). Subsequent to arrest, officers obtained a signed consent from the Defendant to search his motel room (3 RR 140). In addition to the signed consent, officers obtained a magistrate's signature on a search warrant to search the motel room, specifying seeing the shirt in the motel room in the supporting affidavit (3 RR 140). Upon returning to the secured motel room, law enforcement retrieved the Defendant's shirt (4 RR 9). Law enforcement then secured a second warrant to obtain the Defendant's DNA, retrieved such DNA via a mouth swab and had it analyzed by DPS (4 RR 85).

**ISSUE ONE:** The enhancement of Appellant's punishment complies with statutory guidelines and is therefore legally valid.

## STANDARD OF REVIEW

In reviewing a lower court's interpretation of a statute, the standard of review for appellate courts is de novo. *Yazdchi v. State*, 428 S.W.3d 831 (Tex.App.Crim. 2014). "In construing a statute, the court must seek to effectuate the collective intent or purpose of the legislators who enacted the legislation." *Yazdchi* citing *Harris v. State*, 359 S.W.3d 625, 629 (Tex.Crim.App.2011). As *Boykin* emphasizes, "When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment," *Boykin v. State*, 818 S.W.2d 782 (Tex.App.Crim. 1991).

As such, a literal application of the enhancement statute to the case at hand leads to the conclusion that Mr. Bledsoe was enhanced properly.

**Statutory Framework**

Appellant's sentence is lawful because it meets the requirements of § 12.425(b).  That specific section of the Texas Penal Code reads:

> If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies other than a state jail felony punishable under Section 12.35(a), and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a felony of the second degree. Tex. Penal Code § 12.425(b)(Vernon 2011)

The only outside reference that this section makes is to § 12.35(a).  § 12.35(a), the Penal Code provision that speaks to the range of punishment for a State Jail Felony, reads:

> Except as provided by Subsection (c), an individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days. Tex. Penal Code § 12.35(a)(Vernon 2011)

## Argument

The Defendant plead "Not True" to the enhancement allegations during the punishment portion of trial (5 RR 18-9).  As contained in the Exhibit Index, Exhibits 50 and 51, the Judgements from Appellant's previous convictions in cause numbers 08-0177x and 99-0124x, respectively, were entered with no objection from the Defense (Vol. 5, p. 10-11).  After deliberations, the jury found the enhancement allegations to be true and sentenced Appellant to the maximum of 20 years confinement and a $10,000 fine (Vol. 5, p. 32).

The requirements of §12.425(b) of the Texas Penal Code is that any two sequential felony convictions that were not punished as State Jail Felonies may be alleged to enhance a State Jail Felony's punishment range to that of a Second Degree Felony.  After being admitted with no objection by the Defense, a closer look at the judgments reveals that they occurred sequentially.

With respect to the first enhancement allegation, in Cause Number 99-0124x, exhibit 51 reveals that the

underlying offense in that case was Possession of a Controlled Substance, a Second Degree Felony. Furthermore, there are no "Findings on Enhancement" on the face of the Judgement because it was charged and punished as a Second Degree Felony, with Bledsoe being sentenced to 15 year confinement. It was signed October 3, 2003.

Concerning the 08-0177x enhancement allegation, exhibit 50 reveals that it was a Burglary of a Building enhanced to a Second Degree Felony. As there are no allegations that such Burglary occurred in a Habitation, the charged offense is 08-0177x was that of a State Jail Felony. Bledsoe pled true to the enhancement allegations and was sentenced to 7 years in the Institutional Division of TDCJ after pleading guilty on January 26, 2009.

Appellant argues that because 08-0177x was for an underlying State Jail offense, that the Court cannot use said conviction for purposes of a 12.425(b) enhancement. Appellee must respectfully disagree.

13

Applying the de novo standard of review and reading the plain text of the statute reveals that 12.425(b) states "If it is shown on the trial of a state jail felony … that the defendant has previously been finally convicted of two felonies other than a state jail felony *punishable under Section 12.35(a)…*" (emphasis added). Having sequential State Jail convictions is not enough to meet the requirements of 12.425(b). The sequential felonies must not have been punished as State Jail offenses. For purposes of this statutory section, the underlying felony conviction is not as important as the punishment assessed for said felony. The two convictions used to enhance Appellant were punished as Second Degree felonies. Because the two enhancement convictions were felonies, sequential and not punished as State Jail Felonies, the charged State Jail Felony must be enhanced to a Second Degree punishment.

Appellant cites numerous cases and the specific Texas Penal Code section 12.42(a)(2) in his arguments.

14

He contends that applying the 12.42(a)(2) standard to his case shows that the underlying State Jail Felony conviction from 08-0177x that the State used to enhance him is improper. Unfortunately for Appellant, the law changed. Texas Penal Code section 12.42(a)(2) reads:

> If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a second-degree felony. Tex. Penal Code Sect. 12.42(a)(2)(Vernon 2007)

In 2011, the Legislature amended the statutes, adding Texas Penal Code Section 12.425, a specific provision dictating "Penalties for Repeat & Habitual Felony Offenders on Trial for State Jail Felony." As previously noted, the new, current law emphasizes punishment as opposed to conviction. As such, Mr. Bledsoe's contention that his underlying 08-0177x State Jail conviction can't be used to enhance him to a Second Degree Felony is improper.

15

**ISSUE TWO:** Searches conducted and evidence seized from the motel room used against the Appellant at trial were legally obtained and did not violate Appellant's Fourth Amendment rights.

## STANDARD OF REVIEW

The Court reviews a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010).

First, the court applies an abuse of discretion standard to the trial court's findings of fact. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). Affording almost total deference to the trial court's findings, especially those based on an evaluation of the witnesses' credibility and demeanor. *Valtierra*, 310 S.W.3d at 447. Second, the court reviews de novo the trial court's application of the law to the facts. *Id.* Should the court determine that the ruling is reasonably supported by the record and

16

its correct on any theory of law, the lower court's ruling will be affirmed. *Id*. at 447.

**WARRANTS/CONSENTS IN QUESTION**

There are three areas where the Appellant raises issues with respect to warrants/consents in the instant case. Going in the order in which they occurred, the Appellant (1) signed a consent to search his motel room, (2) law enforcement obtained a search warrant and searched the motel room, and (3) law enforcement obtained a warrant for DNA on the shirt seized during the previous warrant search. At various points in his appeal and at trial, Appellant attacks these three issues, but for purposes of clarity, Appellee is combining the response to these complaints.

**LAW ENFORCEMENT LEGALLY JUSTIFIED TO SEIZE SHIRT WITHOUT WARRANT**

In the instant case, law enforcement was within its bounds to seize the shirt (evidence of a crime), at the time it was first observed. Under the Plain-View Doctrine, appellate courts apply a two-prong test to determine whether seizure of an item meets the

requirements of the exception to the Fourth Amendment's warrant requirement. "First, the police must have a right to be in the location where the article is in plain view. Second the article found in plain view must be evidence that leads the police to have the immediately apparent belief that the article may be evidence of a crime, contraband, or otherwise subject to seizure." *Carmen v. State*, 358 S.W.3d 285, 294 (Tex.App.-Houston 2011) (citing *Walter v. State*, 28 S.W.3d 538 (Tex.Crim.App.2000))(also citing *Horton v. California*, 496 U.S. 128, 133 (1990)). Said limitation on items that may be seized are confined to objects that are "perceived to be contraband, stolen property, or incriminating in character" *U.S. v. Jackson*, 131 F.3d 1105 (4th Cir. 1997), (citing *Horton v. California*, 496 U.S. 128, 136 (1990)).

At the time the Appellant was arrested, law enforcement was exercising a lawful arrest warrant. The legality of the underlying arrest warrant was not

attacked; therefore, the Court should conclude that the arrest warrant was valid.

With respect to the two prong approach to the validity of the Plain-View Doctrine, law enforcement was present due to a valid arrest warrant. Law enforcement knocked on Bledsoe's motel room door with a valid arrest warrant and when he opened the door, they saw on the floor, the shirt he had worn while committing the burglary they were investigating (2 R.R. 19). Having been at the location with a legal justification, we must now examine the second prong: the evidence in plain-view must be evidence of a crime (amongst other things). As stated previously, the shirt seized was used as justification to obtain the search warrant. This shirt was the same shirt that DNA analysis later concluded was the one worn by the Defendant. Furthermore, it is the same shirt that law enforcement discussed at the Suppression Hearing and later at trial. Applying the bifurcated standard of review's abuse of discretion prong, giving the Court

deference with respect to the reliability of the witnesses, this Court should allow for the fact that law enforcement knew what they saw, and that what they saw was the shirt later described in the warrant. Applying this evidence to the law with the standard of review's de novo prong reveals that the theory of the law relied upon by the Prosecution was valid. This discussion is beside the point because out of an abundance of caution, law enforcement received consent and obtained a warrant to seize the shirt.

**APPELLANT CONSENTED TO THE SEARCH**

Appellant's consent to the search of his motel room trumps any error that may or may not have been made in the warrant to search his motel room. Whether applying the Supreme Court's requirement for consent, requiring that consent be voluntary and intelligent as proved by a preponderance of evidence *Schneckloth v. Bustamonte*, 412 U.S. 218 (1978) or the Texas Constitution's requirement that consent must be proved by clear and

20

convincing evidence, Tex. Const., art. I, Sect. 9, the evidence presented at trial was clear: Bledsoe consented to the search of his motel room.  When determining whether consent was voluntary, the Court looks at several factors.  Taking a totality of the circumstances approach, Courts look at factors including:

> Whether the accused was advised of his constitutional rights, the length of the detention, whether the questioning was repetitive or prolonged, whether the accused was aware that he could decline to answer the questions, and what kind of psychological impact the questioning had on the accused.  *Tucker v. State*, 369 S.W. 3d 179 (Tex.Crim.App. 2012) citing *Schneckloth v. Bustamonte*, 412 U.S. at 226-27 (1978).

Applying these factors to the case at hand, the only reasonable conclusion is that Bledsoe knew what he was doing.  Testimony indicated that consent was received fairly quickly, so the length of detention was minimal. According to the officer that received consent, 20 minutes transpired from the time that Bledsoe was arrested, transported to the Harrison County Jail, taken to an interrogation room and consented to the

search (2 R.R. 24). As such, the length of interrogation along with the transportation to the jail was anything but lengthy. Furthermore, due to the short length of time in the actual interrogation room, it would be impossible for the questioning to be very repetitive. With respect to the Appellant's ability to understand what was going on, we must bear in mind that the Appellant is a hardened career criminal with the intelligence and ability to write and brief cases. The criminal was mirandized and due to his prior brush-ins with law enforcement, was savvy to the process. The Defendant knew he could decline consent and as such, it is highly unlikely that this sort of a detention would have any psychological impact on the Defendant.

As proven in testimony and the video played at trial, Mr. Bledsoe signed away his right to complain about the search (2 RR 8). Additionally, during the Suppression hearing of this case, the Court had an opportunity to review said consent and gauge the credibility of the testifying witnesses before

22

ultimately coming to the conclusion that Bledsoe knew what he was doing when he signed the consent. Bledsoe even testified at the Suppression. Applying the bifurcated standard of review, the abuse of discretion hurdle requires that deference be given to the trial court's analysis of the evidence presented. At trial, Appellant had an opportunity to examine/cross-examine law enforcement at both the Suppression hearing and at trial. Based on the evidence presented: recorded consent video and testimony from the officers that received consent, the trial court determined that based on the credibility of the witnesses and the consent of the defendant himself, the consent was valid. Moving onto the de novo prong, the theory of the law in cases involving consent shows that there was adequate evidence to substantiate the Trial Court's denial of Appellant's Motion to Suppress.

**WARRANT ERRORS INSUFFICIENT TO INVALIDATE THE WARRANT**

Appellant contends that the typographical error on the warrant justifies this Court throwing out the Search Warrant.  Appellee respectfully disagrees.  Per *Jones v. State*, in a similar case, where an apartment number was wrong on a search warrant, the Court of Appeals in Amarillo determined that that error alone was insufficient to invalidate the warrant. 914 S.W.2d 675 (Tex.Ct.App.-Amarillo 1996).  Citing federal cases, *Jones* states:

> federal courts have taken into account facts known by the executing officer but not expressly stated in the supporting affidavit, such as where (1) an officer involved in the search was the affiant to the search warrant's supporting affidavit, and (2) the evidence shows that the same officer had previously been to the premises considered covered by the warrant

citing *United States v. Gordon*, 901 F.2d 48, 49-50 (5th Cir.).  In the instant case, Sgt Darryl Griffin filled out the affidavit to get the warrant, secured the magistrates signature to said warrant and personally took the warrant to the motel room that was searched (4 RR 9-10).  In fact, Griffin testified to the fact that

24

he was present at the time that the premises was secured (4 RR 9).

*Jones* also cites concerns about having sufficient information so that law enforcement searches the right premises. In the instant case, because of Sgt. Griffin's involvement from the outset of the investigation, and his knowledge of the Defendant and where he lived, those justifications hold in the instant case as well. *Jones*, 914 S.W.2d 675, 679.

Applying the bifurcated standard of review, the trial court weighted the evidence and credibility of witnesses both at the suppression hearing and at trial and correctly determined that law enforcement met their Constitutional obligations. Additionally, any error in the warrant is nullified because of the Appellant's consent to the search.

Appellee also contends that due to errors in the DNA warrant's description of the property, the results should be thrown out. The Appellant/Defendant thought he had consented to the DNA search per his testimony at

25

the Suppression Hearing (2 R.R. 42).  The error in the DNA warrant is analogous to any error in the initial search warrant.  There is no threat of the DNA warrant searching an innocent third-party's property.  In fact, the physical evidence had already been seized by the state due to the previously discussed consent and warrant.  Based on the 4-corners of the warrant, there was probable cause to obtain a DNA sample from the Defendant.  Whether a shirt is white, grey or light blue is an issue best determined by the Court during the Suppression Hearing and jury during trial.  Any delineation in shirt color in the warrant is analogous to a typographical error in the warrant, similar to *Jones v. State*.

In summation, Appellant's arguments were insufficient at his Suppression Hearing, at trial and once again on appeal.  Attempting to circumvent his own representation, he now seeks to invalidate a conviction that is largely his own doing.  He burglarized a business, consented to the search that law enforcement

ultimately got a warrant to conduct and thought he had consented to a DNA search. The findings of both the Trial Court and Jury should be upheld.

**PRAYER FOR RELIEF**

Based on the foregoing, the Appellee prays that the Appellant's points of error be overruled and judgment be affirmed.

Respectfully Submitted,

Jonathan Hyatt
Assistant District Attorney
Harrison County District
Attorney's Office
200 West Houston Street
Marshall, Texas 75670
Telephone: 903 935-8408
Facsimile: 903 938-9312

/s/ Jonathan Hyatt
Jonathan Hyatt
State Bar No. 24072161

**CERTIFICATE OF COMPLIANCE**

I certify that this brief contains 2,857 words according to the computer program used to prepare the document.

/s/ Jonathan Hyatt
Jonathan Hyatt


**CERTIFICATE OF SERVICE**

A copy of this brief was provided on May 4, 2015 to:
Jamie Bledsoe, Inmate #1945574 by U.S. mail return
    receipt requested,
Cheryl Cooper-Sammons via facsimile,
Hon. Brad Morin via facsimile, and
Ebb Mobley via facsimile.

/s/ Jonathan Hyatt
Jonathan Hyatt