

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00018-CR
No. 02-22-00019-CR

_____

THE STATE OF TEXAS

V.

JOSEPH TURNER, Appellee

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court Nos. CR21-00132, CR21-00133

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

The State appeals from the trial court's order granting Appellee Joseph Turner's motions to suppress evidence. The State argues in two issues that the trial court erred in granting Turner's motions because (1) there was reasonable suspicion to stop Turner's car, (2) there was reasonable suspicion to justify prolonging the detention in order to have a drug dog sniff Turner's car, and (3) Turner consented to an open-air sniff by a drug dog. We affirm.

## I. Background

Officer Strickland and his partner were sitting in their patrol car just north of Gainesville High School observing northbound traffic on I-35. Strickland noticed a Nissan Altima that was, according to Strickland, traveling in the left-hand lane despite the fact that there were "no cars on his right-hand lane, where he was able – obstructing him from being able to get back in the proper lane without passing." Turner was the driver of the Altima.

Strickland pulled out onto I-35 and followed Turner. In Strickland's opinion, Turner's car started to go faster. He testified that Turner continued traveling in the left lane despite there being no cars in the right lane. Strickland also said there are signs on the highway indicating that the left lane is for passing only. However, Strickland could not "necessarily say if" Turner was on I-35 where those signs were posted. In any event, there was a "left lane for passing only" sign about a mile before traffic would have reached Strickland's stationary position.

Strickland followed Turner for about a mile before making a traffic stop. He told Turner the reason for the stop, did his "typical interview," and asked Turner to step out of his car while he completed a warning for the violation of driving in the left lane without passing. Strickland asked Turner if he had any large amounts of U.S. currency or was carrying any drugs. According to Strickland, when he specifically asked Turner about marijuana, Turner's voice changed and he reacted differently. When Strickland asked Turner for consent to search his car, Turner told him no. Strickland also asked him if a drug dog would alert to Turner's car. Turner told him "you can go get the dog." Strickland called another deputy to bring a dog to sniff Turner's car.

The drug dog "alerted" on Turner's car, and Strickland searched it. He found a backpack and a fanny pack, containing a combined total of over $52,000 in cash. He also found an MDMA pill and a small amount of marijuana in the trunk. Turner was arrested for possession of the MDMA and marijuana.

Two videos were admitted at the suppression hearing. The first was Officer Strickland's dashcam, the second his bodycam. The dashcam shows the highway from Officer Strickland's point of view as he faces it. Turner's gray Nissan is seen traveling past Strickland's field of vision in the left lane of the highway. Several other cars are present including, significantly, cars traveling in the right lane. As the Nissan passes by, Strickland can be seen entering the highway and beginning his pursuit in the left lane. Turner's car cannot be seen again until about 30 seconds later, and there are two

3

other cars between Strickland's cruiser and Turner's Altima. The Altima appears to pass at least two cars before it is again obscured from view. Nearly a minute later, Turner's car can again be seen. Turner then drives in the left lane for about forty more seconds (this time without passing any other cars in the right lane) until he changes lanes. Turner returns to the left lane, this time passing both a pickup truck and an eighteen-wheeler. Strickland then activates his lights and pulls Turner over.

Officer Strickland's bodycam recorded his conversation with Turner. In it, Strickland asks Turner general questions about where he lived and his travel plans. Strickland then explains to Turner that his partner "works narcotics" and that Strickland was "helping him out." He asks Turner if he had any weapons, drugs, or large sums of cash in his car. Turner denies having any of those things. Strickland then asks about Turner's car—Turner tells him it was rented by a friend of his. Strickland also asks Turner for consent to search his car, to which Turner replies that there is "no need" to search it, but that Strickland could "put a canine on my vehicle if you want to put a canine on it."

Fourteen minutes into the bodycam video, Officer Strickland calls for a drug dog. While they wait, Strickland continues to question Turner about the car he was driving and explains that the place he was stopped was a "high-traffic" drug area. When the canine officer arrives, Strickland explains his suspicions about Turner to him. The dog, according to Strickland and his partner, makes a positive alert on the car. Strickland then searches Turner's car.

4

Turner was indicted both for possession of MDMA and money laundering. He moved to suppress the evidence found in his car. After hearing the evidence, the trial court granted Turner's motions.

The trial court made findings of fact, specifically finding that "[t]he record is void of testimony regarding when Joseph Turner entered I-35," and that Officer Strickland "was not in sufficient position for a sufficient length of time to observe whether Joseph Turner was driving in the left lane not passing." Further, the trial court found that Turner was "in the process of passing another vehicle" at the time that his car first appeared in Strickland's dashcam.

As for what occurred after the traffic stop, the trial court found that (1) Strickland asked for consent to search Turner's car after he had gathered information in order to issue a written warning to Turner, (2) Turner refused consent to search his car but consented to a drug dog to "run. . . on the vehicle," (3) it was fourteen minutes before Strickland called for a K-9 officer to come to the scene, and (4) it was twenty-eight minutes into the traffic stop that the drug dog arrived.

The trial court concluded that Officer Strickland did not have reasonable suspicion to believe that Turner had committed a traffic violation, that Strickland had had sufficient time to complete the traffic stop by the time he asked Turner for consent to search the car, that there was no probable cause to extend the length of the traffic stop, and that Turner should have been free to leave when he denied Strickland's request to search the car.

## II. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

## III. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A defendant seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest. *Rawlings v. Kentucky*, 448 U.S. 98,

104–05, 100 S. Ct. 2556, 2561 (1980); *State v. Martinez*, 569 S.W.3d 621, 623 (Tex. Crim. App. 2019). Once the defendant does so, the burden shifts to the State to prove either that the search or seizure was conducted pursuant to a warrant or, if warrantless, was otherwise reasonable. *Martinez*, 569 S.W.3d at 623. A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Johnson*, 622 S.W.3d at 384. An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *See Johnson*, 622 S.W.3d at 384. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017).

### IV. Analysis

### A. Officer Strickland did not have reasonable suspicion to detain Turner.

Officer Strickland explained that he stopped Turner after observing him

driving in the left lane without passing.[1] The Transportation Code states that "[t]he operator of a vehicle or streetcar shall comply with an applicable official traffic-control device placed as provided by this subtitle." Tex. Transp. Code § 544.004(a). A lawfully placed sign is an "official traffic-control device." *Id.* § 541.304(1). Additionally, the Transportation Code empowers the relevant authority to place "a sign that directs slower traffic to travel in a lane other than the farthest left lane" "on a highway having more than one lane with vehicles traveling in the same direction." *Id.* § 544.011. However, before an officer can initiate a traffic stop for failing to obey a "left lane for passing only" sign, "the officer must be aware of facts that support a reasonable inference that the defendant drove past the sign before being pulled over." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *see also Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) (specifying that without a "left lane for passing only" sign present within a "reasonable distance of the traffic stop, there is no offense").

According to the trial court's findings, Strickland was parked at mile marker

---

[1]Strickland also testified that his suspicions were aroused because, as Turner drove by Strickland's car, he "kind of positioned himself where the B pillar would be blocking him." The trial court did not make a finding one way or the other regarding this testimony. In addition, the dashcam video appears to refute Officer Strickland's testimony—Turner's head is visible as his car passes by. In any event, we do not consider this assertion in our reasonable suspicion analysis. *See Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) ("The court of appeals should view the video in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings that support" that ruling).

495 on I-35. The previous "left lane for passing only" sign was positioned at mile marker 494 (i.e., upstream of the traffic flow). Further, as the court found, there was no "testimony regarding when . . . Turner entered I-35." And it is clear (both from the trial court's findings and the dashcam video) that Turner was indeed in the left lane passing cars on his right when Strickland began to pursue him. Even allowing for a short length of time toward the end of the pursuit in which Turner was not passing cars, there are simply not enough facts from which Strickland could have reasonably inferred that Turner drove past a "left lane for passing only" sign and failed to obey it. *Cf. Jaganathan*, 479 S.W.3d at 247–48 (affirming trial court's overruling of suppression motion where evidence showed defendant passed "left lane for passing only" sign but failed to change lanes for at least 45 seconds). Applying the appropriate standard of review as set forth above, we hold that the trial court did not err in finding that Officer Strickland lacked reasonable suspicion to detain Turner for a traffic violation.

The State also argues that reasonable suspicion following the stop of Turner justified its extension to allow for a drug dog sniff. *See Matthews v. State*, 431 S.W.3d 596, 603–04 (Tex. Crim. App. 2014) (holding that reasonable suspicion of further criminal activity that develops during a traffic stop may justify prolonging a detention so that a canine sniff can occur). The extension of an *invalid* traffic stop, on the other hand, cannot be justified by an officer's subsequent suspicion, no matter how seemingly reasonable. *See State v. Bland*, No. 13-15-00041-CR, 2016 WL 5941846, at *7 (Tex. App.—Corpus Christi–Edinburg Oct. 13, 2016, no pet.) (mem. op., not for

publication) (holding that any evidence of a drug dog sniff following an unreasonable detention was inadmissible as "fruit of the poisonous tree").

## B. The State has neither preserved nor briefed any claim that the taint of the unlawful stop was attenuated.

Even when a traffic stop is unlawful, a driver's consent to search a vehicle *may* attenuate the taint of the unlawful detention and justify admission of the contested evidence. *Wolf v. State*, 137 S.W.3d 797, 805 (Tex. App.—Waco 2004, no pet.); *see also Utah v. Strieff*, 579 U.S. 232, 238, 136 S. Ct. 2056, 2061 (2016) ("Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance. . . ."). This is commonly known as "attenuation of the taint." *See Massey v. State*, 667 S.W.3d 784, 789 (Tex. Crim. App. 2023) (laying out factors to use in analyzing attenuation-of-taint).

In this case, however, the State did not argue at trial that an intervening event broke the "causal chain between the unlawful stop and the discovery of drug-related evidence" in Turner's car. *Strieff*, 579 U.S. at 239, 136 S.Ct. at 2061. When the State is the appealing party, it may not raise an issue on appeal that it did not present to the trial court. *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998); *see also State v. Steelman*, 93 S.W.3d 102, 106–07 (Tex. Crim. App. 2002) (holding State forfeited attenuation-of-taint argument on appeal where it failed to present that argument to trial court). Neither do the Court's findings raise the issue of attenuation. And

10

although the State's brief on appeal discusses the fact that Turner appeared to acquiesce to the arrival of a drug dog, the State does not analyze the fact of consent under an attenuation theory. For these reasons, therefore, we will not consider that issue in our opinion.

## V. Conclusion

We hold that there was no error in the trial court's decision to grant Turner's motions to suppress. Accordingly, we overrule the State's issues and affirm the trial court's orders.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 29, 2023

11