ACCEPTED
03-14-00802-CR
8184965
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/10/2015 3:32:27 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00802-CR

In the
Court of Appeals for the Third District of Texas
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/10/2015 4:54:27 PM
JEFFREY D. KYLE
Clerk

_____

No. 13-1936-K26
In the 26th Judicial District Court
Williamson County, Texas

_____

PEDRO ELIZONDO MARTINEZ JR.
*Appellant*
v.
THE STATE OF TEXAS
*Appellee*

_____

STATE'S BRIEF IN RESPONSE

_____

Jana Duty
District Attorney
Williamson County, Texas

Daniel Sakaida
State Bar No: 24084601
Assistant District Attorney
daniel.sakaida@wilco.org

John C. Prezas
State Bar No: 24041722
Assistant District Attorney
jprezas@wilco.org
405 Martin Luther King, Box 1
Georgetown, Texas 78626
(512) 943-1234
(512) 943-1255 (fax)

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument as the issues presented in this appeal are not novel and the record is straightforward. However, if the Court believes that oral argument would help resolve the matter, the State would request the opportunity to appear and argue.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), the State would supplement Appellant's identification of the list of parties as follows:

<u>Presiding Judge at Trial</u>

- The Honorable Donna King, 26th Judicial District Court, Williamson County, Texas.

<u>Attorneys for the State</u>

- Mr. Daniel Sakaida (appeal), Assistant District Attorney for Williamson County, 405 Martin Luther King, Georgetown, Texas 78626.

- Mr. John C. Prezas (appeal), Assistant District Attorney for Williamson County, 405 Martin Luther King, Georgetown, Texas 78626.

- Mr. Geoffrey Puryear (trial), Assistant District Attorney for Travis County, 509 West 11th St., Austin, TX 78701.

- Mr. Oscar Ryan Salinas (trial), Assistant District Attorney for Bexar County, 101 W. Nueva St., Sans Antonio, TX 78205.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................... ii

IDENTIFICATION OF THE PARTIES ................................................... ii

TABLE OF CONTENTS.................................................................... iii

INDEX OF AUTHORITIES................................................................ iv

STATEMENT OF FACTS .................................................................1

SUMMARY OF THE ARGUMENT ...................................................7

REPLY TO ISSUES FOR REVIEW ...................................................7

    I.   There was sufficient evidence for the jury to find that Appellant's vehicle was a Deadly Weapon...................................................................7

        A.    There was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant's vehicle was used in a reckless or dangerous manner ...................................................................11

        B.    There was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant's vehicle posed an actual, and not merely hypothetical, danger to others...........................................................17

    II.    The trial court did not err in allowing testimony about a prior accident on Interstate 35, and even if error, the brief testimony to that end presented no reversible harm..........................................................................22

        A.    The trial court did not abuse its discretion in admitting testimony about a prior accident, as it was relevant to show the officer's actions and to support the Deadly Weapon Finding .................................................22

        B.    The trial court did not abuse its discretion in admitting the testimony under Texas Rule of Evidence 403 ...................................................25

        C.    Even if admitting the testimony was error, it was harmless as it was limited, not inflammatory, and not emphasized by the State ...........................29

PRAYER ...................................................................................33

CERTIFICATE OF COMPLIANCE....................................................34

CERTIFICATE OF SERVICE ..........................................................34

# INDEX OF AUTHORITIES

## CASES

*Brister v. State*,
    449 S.W.3d 490 (Tex. Crim. App. 2014) ............................................. 9, 10, 26

*Chambers v. State*,
    805 S.W.2d 459 (Tex. Crim. App. 1991) ....................................................... 8

*Clayton v. State*,
    235 S.W.3d 772 (Tex. Crim. App. 2007) ...................................................... 8

*Devoe v. State*,
    354 S.W.3d 457 (Tex. Cim. App. 2011) ...................................................... 23

*Drichas v. State*,
    175 S.W.3d 795 (Tex. Crim. App. 2005) ............. 9, 11, 18, 19, 20, 21, 25, 26

*Farris v. State*,
    819 S.W.2d 490 (Tex. Crim. App. 1990) ...................................................... 8

*Foley v. State*,
    327 S.W.3d 907 (Tex. App.—Corpus Christi 2010) .................................... 26

*Garrett v. State*,
    851 S.W.2d 853 (Tex. Crim. App.1993) ....................................................... 7

*Gigliobianco v. State*,
    210 S.W.3d 637 (Tex. Crim. App. 2007) ............................................... 27, 28

*Jackson v. Virginia*,
    443 U.S. 307 (1979) .................................................................................7, 8

*Johnson v. State*,
    932 S.W.2d 296 (Tex. App. —Austin 1996, pet. ref'd) ............................... 27

*Johnson v. State*,
    967 S.W.2d 410 (Tex. Crim. App. 1998) .................................................... 31

*Keller v. State*,
No. 03-13-00501-CR, 2014 Tex. App. LEXIS 12506 at *13-14 (Tex. App.—
Austin Nov. 20, 2014, no pet.) (mem.op., not designated for publication) ..27

*King v. State*,
895 S.W.2d 701 (Tex. Crim. App.1995) ........................................................8

*King v. State*,
953 S.W.2d 226, 273 (Tex. Crim. App. 1997) ...............................................32

*Losada v. State*,
721 S.W.2d 305 (Tex. Crim. App. 1986) ........................................................8

*Mann v. State*,
12 S.W.3d 89 (Tex. App.—Austin 2000) (*aff'd* 58 S.W.3d 132 (Tex. Crim.
App. 2001) ................................................................................... 10, 11, 18

*Mann v. State*,
58 S.W.3d 132, 132 (Tex. Crim. App. 2001) ...............................................10

*Matson v. State*,
819 S.W.2d 839 (Tex. Crim. App. 1991) ........................................................8

*Montgomery v. State*,
810 S.W.2d 372 (Tex. Crim. App. 1991) (op. on reh'g)..............................23

*Moses v. State*,
105 S.W.3d 622, 627 (Tex. Crim. App. 2003) ...............................................24

*Motilla v. State*,
78 S.W.3d 352 (Tex. Crim. App. 2002) ................................................. 31, 32

*Muniz v. State*,
851 S.W.2d 238 (Tex. Crim. App.1993) ........................................................8

*Russo v. State*,
228 S.W.3d 779 (Tex. App.—Austin 2007, pet. ref'd)................................23

*Sierra v. State*,
280 S.W.3d 250 (Tex. Crim. App. 2009) ...................................................9, 10

*Solomon v. State*,
49 S.W.3d 356 (Tex. Crim. App. 2001) ........................................................31

v

*Sorrells v. State*,
343 S.W.3d 152 (Tex. Crim. App. 2011) ........................................................9

*State v. Duran*,
396 S.W.3d 563 (Tex. Crim. App. 2013) ........................................................9

*Tucker v. State*,
369 S.W.3d 179 (Tex. Crim. App. 2012) ........................................................9

*Tyra v. State*,
897 S.W.2d 796 (Tex. Crim. App. 1995) ......................................................10

*Williams v. State*,
946 S.W.2d 432 (Tex. App—Fort Worth 1997) *aff'd in part, rev'd in part*,
970 S.W.2d 566 (Tex. Crim. App. 1998) ................................... 18, 19, 21, 26

*Winegarner v. State*,
235 S.W.3d 787 (Tex. Crim. App. 2007) ......................................................27

<u>RULES</u>

Tex. R. App. Proc. 44.2(b)....................................................................................31

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF FACTS

The state wishes to clarify the following facts to supplement those addressed in Appellant's brief.

At about 9:30 on the evening of October 30, 2013, one Officer Morris was responding to an incident on the southbound side of Interstate 35 in Williamson County when he observed a single-car accident take place on the northbound side of the Interstate.[1] At trial, Deputy Rodolfo Pena testified that he responded to the accident,[2] followed shortly thereafter by Officer David McDonald[3] and his trainee Officer John Cochran.[4]

When the Deputy Pena arrived at the scene of the accident, he found Appellant's truck facing south into oncoming traffic in the fast northbound lane on Interstate 35, with Appellant's bumper and some beer cans also on the road.[5] Deputy Pena testified that Appellant needed to lean against his truck for stability, that his speech was slurred, that he smelled of alcohol, and that he had admitted to

---

[1] R.R. III:56-57.

[2] R.R. III:23-24.

[3] R.R. III:118.

[4] R.R. III:32-33.

[5] R.R. III:24, 33-34.

having a few drinks before driving.[6] Deputy Pena also testified that the roads were "a little bit wet" because it had been raining, and that there was light traffic when he arrived on scene.[7]

Officers McDonald and Cochran took over the scene from Deputy Pena once they arrived.[8] Officer Cochran observed that several beer cans from a cooler in Appellant's truck were thrown onto the roadway from the accident, and took photographs of the same.[9] Further, Appellant was still leaning against his truck, had red, bloodshot, and glassy eyes, smelled of alcohol, had difficulty remembering events, and had trouble even finding his wallet.[10] Appellant told Officer Cochran that he had consumed four to six alcoholic beverages an hour prior to the accident.[11] Officer Cochran confirmed that while Appellant refused to participate in the standard field sobriety tests, Appellant's actions and behaviors were consistent with intoxication.[12] However, because of an error, Officers believed that Appellant had only one previous conviction for Driving While Intoxicated, and therefore did not seek a blood draw warrant as they normally

---

[6] R.R. III:24, 121.

[7] R.R. III:28.

[8] R.R. III:25.

[9] R.R. III:34-35, State's Exhibits 2-6.

[10] R.R. III:39, 46 (Officer Cochran), R.R. III:121 (Officer McDonald).

[11] R.R. III:40.

[12] R.R. III:41.

2

would have if they had been aware that Appellant's conduct was in fact a felony offense.[13]

The officers filled out a Texas Department of Transportation crash report, and listed "Failure to maintain a single lane" as a contributing factor to the accident, with use of alcohol and speeding as possible contributing factors.[14]

The location where Appellant crashed on Interstate 35 was very dangerous,[15] in the far left of three lanes after dark. At trial, Appellant's counsel stated that there was a "bunch of traffic flying past"[16] and said traffic was moving "fairly quickly."[17] Indeed, the video from Officer Cochran's car-mounted camera admitted as State's Exhibit 7—later slightly redacted and admitted as Court's Exhibit 1—shows a steady stream of vehicles passing the scene shortly after the accident. Officer Cochran testified that this accident happened around 9:30, relatively early in the evening, and that it is not abnormal for many vehicles to be on Interstate 35 near the location of this accident, including some with families.[18]

---

[13] R.R. III:48-49, 85.

[14] R.R. III:89.

[15] R.R. III:119.

[16] R.R. III:78.

[17] R.R. III:77.

[18] R.R. III:51.

Applicant told the officers that he "hydroplaned" into the concrete wall, totaling his truck.[19] However, there is no mention in the record of any standing water on the Interstate, and indeed, there was testimony that the surface of the road was only "a little bit wet."[20] Further, there was a substantial paved shoulder separating the lane of traffic from the concrete wall with sufficient room to park a patrol car where Appellant would have crashed.[21] Therefore, Appellant would have needed to stray a substantial distance out of his lane on a straight stretch of Interstate 35 to strike the wall. There were street lights illuminating the Interstate around the scene as well.[22]

After being arrested and placed in the back seat of the patrol car, Applicant was "a bit sleepy" and had trouble staying awake, a possible sign of intoxication.[23] Appellant also made incriminating admissions while seated in the back, including that he had been drinking, that he should have just gone home, and that he was drinking and driving and wrecked.[24]

Early in Officer McDonald's direct examination, the State asked "And you say I-35 is dangerous or at least this area is dangerous. Do you have any

---

[19] R.R. III:58.

[20] R.R. III:28.

[21] Court's Exhibit 1, from 21:54:20 to 21:54:45.

[22] *Id.*; R.R. III:93-94.

[23] R.R. III:97-98.

[24] R.R. III:102, 104, 148.

4

experience with why it would be considered dangerous?"[25] As the Officer began to answer, Appellant objected to relevance and that the testimony was more prejudicial than probative. The State argued that the testimony would go to the deadly weapon finding, specifically showing that cars and accidents on Interstate 35 are in fact capable of causing serious bodily injury or death, particularly when stopped in a lane of traffic.[26] The district court overruled the objection, and the Officer testified:

> I believe it was in 2012. We worked an accident on I-35 about a mile up from where this accident occurred. A deputy constable was working an overtime gig providing traffic control for a construction site, and he was hit in the rear as he was parked with his emergency lights activated by what was determined to be an intoxicated driver and he was seriously injured and sent to the hospital.[27]

This incident was never mentioned again by any witness or attorney in the rest of the trial, including examinations and argument.

Oscar Salinas, in closing arguments for the State, argued for the deadly weapon finding based on "common sense."[28] Specifically, Mr. Salinas argued that such a finding was reasonable given that Appellant had spun out on an interstate, and hit a concrete wall, totaling his truck.

---

[25] R.R. III:119.

[26] R.R. III:120.

[27] R.R. III:120.

[28] R.R. III:149.

5

In closing arguments, Appellant's counsel continued to argue that Appellant had reacted correctly to hydroplaning; "We know that the accident wasn't his fault. He hydroplaned. Okay?"[29]

In response, Geoffrey Puryear for the State argued that Appellant in fact had not made the right decisions that night, because "if he did, he wouldn't be in that wreck."[30] Mr. Puryear went on to argue that the accident was evidence that Appellant suffered from a loss of mental and physical faculties. Additionally, Mr. Puryear pointed to the various admissions made by Appellant when he was sitting in the back of the patrol car, where he admitted to drinking and driving, then wrecking his vehicle.[31] Mr. Puryear also specifically pointed out that the danger posed by Appellant's driving was not "hypothetical" because, in part, he was just as capable of swerving the opposite direction that he did and into a "minivan" instead of the concrete median he in fact hit.[32]

---

[29] R.R. III:161.

[30] R.R. III:170.

[31] R.R. III:170.

[32] R.R. III:172-73.

6

SUMMARY OF THE ARGUMENT

First, there was sufficient evidence for the jury to find that Appellant's vehicle was, in the manner of its use, a deadly weapon, specifically that Appellant drove in a reckless or dangerous manner, and that he actually put others in danger. Second, brief testimony concerning a prior related accident was not improperly admitted, and even if it was error, the admission was harmless.

REPLY TO ISSUES FOR REVIEW

**I.   There was sufficient evidence for the jury to find that Appellant's vehicle was a Deadly Weapon**

*Sufficiency of the Evidence*

A reviewing court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[33] In conducting a review of the sufficiency of the evidence, "a reviewing court, '…faced with a record of historical facts that supports conflicting inferences' must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any

---

[33] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex. Crim. App.1993).

7

such conflict in favor of the prosecution, and must defer to that resolution."[34] Reconciliation of evidentiary conflicts is solely a function of the trier of fact.[35]

This standard of review applies to both direct and circumstantial evidence.[36] On appeal, a reviewing court should not reevaluate the weight and credibility of the evidence, but instead considers only whether the jury reached a rational decision.[37] The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony."[38] Further, an appellate court should determine whether necessary inferences are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[39]

The court may also consider "indisputable visual evidence" in the record, including in video recordings in evidence.[40] An appellate court should view video evidence in the light most favorable to the ruling, and should assume that the finder of fact "made implicit findings that support" that conclusion.[41]

---

[34] *Matson v. State*, 819 S.W.2d 839, 843-46 (Tex. Crim. App. 1991) (*quoting Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *Farris v. State*, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990)); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[35] *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

[36] *See King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App.1995).

[37] *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App.1993).

[38] *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

[39] *Sorrells v. State*, 343 S.W.3d 152, 156 (Tex. Crim. App. 2011).

[40] *State v. Duran*, 396 S.W.3d 563, 573-74 (Tex. Crim. App. 2013).

[41] *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012).

*Deadly Weapon*

In order to uphold a deadly weapon finding the evidence—viewed in the light most favorable to the verdict—must demonstrate that: (1) the object meets the definition of a deadly weapon, (2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based, and (3) other people were put in actual danger.[42] In the context of a Driving While Intoxicated case, the first and third prongs are inherently at issue, and the second prong is generally satisfied when the defendant was actually driving at the time.

As to the first prong, a vehicle is not a *per se* deadly weapon by statute, but may be used in a manner capable of causing death or serious bodily injury when the manner in which the defendant used the vehicle was reckless or dangerous.[43] There is no requirement that the defendant have the specific intent to use the vehicle as a deadly weapon,[44] and reckless or dangerous driving may be established by a showing that Appellant was "too drunk to control" his vehicle."[45]

---

[42] *See Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014) (*citing Drichas v. State*, 175 S.W.3d 795, 797-98 (Tex. Crim. App. 2005)); *see also Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009).

[43] *See Sierra*, 280 S.W.3d at 250.

[44] *Drichas*, 175 S.W.3d at 798; *Mann v. State*, 12 S.W.3d 89, 92-93(Tex. App.—Austin 2000) (*aff'd* 58 S.W.3d 132 (Tex. Crim. App. 2001)).

[45] *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995).

As to the third prong, Applicant's manner of operating the vehicle must have posed an actual rather than hypothetical danger to others.[46] A sufficient showing of actual danger includes "evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner."[47] However, there is no requirement that another person be within a predetermined "zone of danger" or be forced to take evasive action due to Applicant's driving.[48] The exact volume of traffic is relevant only if no traffic exists, a fact which would militate against a deadly weapon finding.[49] As this Court noted, this prong is not satisfied by, "merely a hypothetical potential for *danger if others had been present*," if in reality no persons were.[50] More fundamentally, this prong deals with an object's *capability* of inflicting death or serious bodily injury, not its *probability* of doing so.[51] Law enforcement officers are not to be excluded from the class of persons capable of being endangered.[52]

---

[46] *Brister*, 449 S.W.3d at 494; *Mann v. State*, 58 S.W.3d 132 (Tex. Crim. App. 2001).

[47] *Drichas*, 175 S.W.3d at 797.

[48] *Id*.

[49] *Id* .

[50] *Mann*, 12 S.W.3d at 92 (emphasis added).

[51] *Drichas*, 175 S.W.3d at 800.

[52] *Id.* at 798.

10

**A. There was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant's vehicle was used in a reckless or dangerous manner**

A rational jury could have reasonably concluded beyond a reasonable doubt that Applicant's drove his vehicle in a reckless or dangerous manner. This is not a case of a minor single-car accident or of a driver briefly evading an officer then pulling over safely: this is a case where Appellant totaled his truck on a straight, well-lit section of Interstate 35 after crossing a paved shoulder and hitting a concrete dividing wall only to end up stopped in a lane of traffic.[53] Appellant claimed at the time to the responding officers that he "hydroplaned" and lost control of his truck. This was reckless and dangerous driving, no matter how credible the jury found this statement to be.[54]

*Jury Was Free to Disbelieve*
*Appellant's Statements About Hydroplaning*

The jury could have reasonably believed that Appellant did not hydroplane, and that the accident was a direct result of Appellant's reckless and dangerous driving. The only evidence of hydroplaning is Appellant's own statement to the

---

[53] Court's Exhibit 1, from 21:54:20 to 21:54:45; R.R. III:93-94.

[54] The State does *not* suggest that every Driving While Intoxicated offense involving a single-vehicle accident (or even every such offense involving the collision with another vehicle) should support the finding of a deadly weapon. Not even every Driving While Intoxicated offense involving an accident on an interstate would necessarily justify a deadly weapon finding. Such a *per se* result would be contrary to the intent of and jurisprudence surrounding deadly weapon findings. However, the State does argue that the facts in this specific case do support such a finding after a careful factual analysis, and that the nature and location of the accident are probative in that analysis.

11

responding officers, and the jury could have reasonably believe that he fabricated the hydroplaning as a way to minimize his culpability. He knew he had been drinking and driving, and he knew he had just wrecked his car on the Interstate.[55] The jury could have reasonably concluded that Appellant simply lost control of the vehicle in a situation where an unimpaired driver would not have, and therefore that the accident itself was evidence of reckless or dangerous driving.

This conclusion would be bolstered by the actual state of the road at the scene, as shown by the sworn testimony and admitted video evidence.[56] When officers arrived on scene very shortly after the initial accident, the road was only "a little bit wet,"[57] and the video from the dashboard camera shows no standing water on the road near the scene, minimizing the likelihood of hydroplaning.[58] Testimony and the video showed that the Interstate was straight and well-lit at the scene.[59] The video also showed that the shoulder between the lane of traffic and the concrete wall Appellant struck was paved, wide enough to park a patrol vehicle in, and had

---

[55] Appellant said as much in the back seat of the patrol vehicle. R.R. III:148.

[56] *State v. Duran*, 396 S.W.3d 563, 573-74 (Tex. Crim. App. 2013) (Court may consider indisputable visual evidence in the record); *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) (Court should infer that the finder of fact made implicit findings that support the finder's conclusion).

[57] R.R. III:28.

[58] Court's Exhibit 1, from 21:54:20 to 21:54:45; R.R. III:93-94.

[59] *Id.*

a rumble strip.[60] The jury could have reasonably found that these driving conditions made Appellant's hydroplaning explanation not credible or likely, and further found that the accident was a direct result of his reckless and dangerous driving.

The jury could have also reasonably found that Appellant struck the concrete median with substantial force. When officers responded shortly after the accident, they observed serious damage to the front of Appellant's truck, and that his vehicle's bumper had been ripped off and was lying some distance away from the scene.[61] There was also testimony that the responding officers reported that speeding or failure to control speed was a possible contributing factor.[62] The jury therefore could reasonably infer that Appellant struck the concrete median at a high rate of speed, and such a conclusion would bolster a finding that his driving was inherently reckless and dangerous because he was "too drunk to control the vehicle," a finding which is supported by viewing the evidence in the light most favorable to the verdict.[63]

---

[60] *Id.*

[61] State's Exhibits 6; Court's Exhibit 1 from  21:54:20 to 21:54:45, and at 21:58:45.

[62] R.R. III:89.

[63] *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995) (recklessness established when defendant was "too drunk to control the vehicle").

*Even if Appellant Did Hydroplane,*
*His Driving was Still Reckless and Dangerous*

Even if the jury believed Appellant's statement he "hydroplaned," the jury could have still reasonably concluded that Appellant's vehicle should be considered a deadly weapon. The jury was presented with no evidence that the vehicle mechanically failed in any way, and only Appellant's statement that he hydroplaned. Hydroplaning is not "a freak accident," and the jury could reasonably infer that Appellant was driving in a reckless and dangerous manner by driving on the Interstate as he did.[64] Considering that Appellant totaled his truck into a concrete wall on a straight, well-lit section of Interstate 35, the jury's conclusion could hardly be considered unreasonable.[65]

While Appellant continues to argue that "Martinez responded correctly to the hazardous situation when it occurred,"[66] the State more accurately argued at trial that Appellant lost control of his vehicle due to a failure to operate it in a safe fashion, and he was reckless in putting himself in that hazardous situation:

> Don't let them get away with just saying that this hydroplaning was a freak accident. That's not the way it works. His car didn't get hit by lightning. It didn't fall into an earthquake crack. He was driving at an unsafe speed. He couldn't control his car on wet roads. That's what it comes down to. Was there rain? Absolutely. But he, just like every

---

[64] R.R. III:169-170 (Mr. Puryear, closing for the State).

[65] Court's Exhibit 1, from 21:54:20 to 21:54:45; R.R. III:93-94.

[66] *Brief for Appellant* at 15.

14

one of us, has an obligation to operate his vehicle in a safe fashion when we're driving out on wet roads and he didn't do so.

And he didn't make the right decision. A split-second decision and he made the right one? Why didn't he make it home that night instead of crashing into a median on I-35, a street we all drive on every day. He didn't make the right decision. If he did, he wouldn't be in that wreck. So to try and characterize his behavior as something that we should all emulate, that's just not the way it is, folks. He made the wrong decision. That's loss of mental faculties, loss of physical faculties because he couldn't operate that vehicle. That's why he's at where he's at.[67]

In finding Appellant guilty, the jury adopted this reasoning over Appellant's theory, and that decision should be given deference by this Court. The State went on to argue that since Appellant clearly was capable of swerving out of his lane, across the shoulder, and into a concrete median, then he was equally capable of having swerved the opposite direction and striking a second vehicle at freeway speeds.[68]

In short, the jury could have rationally concluded that Appellant's loss of mental and physical faculties caused him to respond to the road conditions in a reckless and dangerous manner. Specifically, if the jury actually believed that Appellant hydroplaned, the wreck and its severity was evidence that Appellant responded inappropriately to hydroplaning.[69]

---

[67] R.R. III:170.

[68] R.R. III:170.

[69] *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995) (recklessness established when defendant was "too drunk to control the vehicle").

Further, regardless of if the road was "a little bit wet" or not,[70] Appellant knew it was or had been raining, and that he consciously disregarded the risks that would be posed by a wet road surface.[71] As noted by responding officers, his failure to control his speed was possibly a contributing factor to the accident.[72] Yet, knowing the surface of the road was a little bit wet, Appellant drove in such a way as to risk hydroplaning on the freeway, a risk which the jury could have found was actually realized in the moments before Appellant struck the concrete wall.

The jury also viewed the dashboard camera video from the responding officers, wherein many other drivers can be seen driving past the scene of the accident without losing control of their vehicles, implying that hydroplaning was not an unavoidable event that evening, but was something preventable by proper driving techniques including controlling the speed of the vehicle on wet roads. Even taking Appellant at his word, his impaired driving caused him to lose control of his vehicle on the Interstate, giving the jury grounds to find that Appellant had driven in a reckless or dangerous manner.

---

[70] R.R. III:28 (Deputy Pena testifying).

[71] *Tyra*, 897 S.W.2d at 798.

[72] R.R. III:89.

**B. There was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant's vehicle posed an actual, and not merely hypothetical, danger to others**

A rational jury could have found, in light of this evidence, that Appellant's vehicle was *capable* of causing serious bodily injury or death, and therefore posed an actual danger to the other drivers on the Interstate.[73] The evidence need not show that the defendant hit another vehicle, that another driver needed to take evasive action to avoid being hit, or even that another motorist was within a certain number of feet of the defendant.[74] The capability of causing serious bodily injury or death is not to be confused with the probability of doing so.[75]

To be precise, "actual danger" only requires "that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner."[76] The *Drichas* court, citing to an older case from the Fort Worth Court of Appeals, noted that the exact volume of traffic is not relevant unless there was *no* traffic at the time.[77] In that 2nd Court of Appeals case, the court found that a vehicle did not constitute a deadly weapon when there was *no*

---

[73] *See Drichas*, 175 S.W.3d at 800.

[74] *Id*.

[75] *Id*.

[76] *Id.* at 799.; *Mann*, 12 S.W.3d at 92 (noting that the "hypothetical potential for danger" is not sufficient for this element, but that such hypothetical potential was really only appropriate when others are not actually present when the defendant drove in a dangerous manner).

[77] *Id*. at 800 (*citing Williams v. State*, 946 S.W.2d 432, 435-436 (Tex. App—Fort Worth 1997) *aff'd in part, rev'd in part*, 970 S.W.2d 566 (Tex. Crim. App. 1998)).

evidence that any other motorists were on the highway in question, during the time that the defendant was driving *or during the time that his vehicle was stopped on the highway*.[78]

In this case, scores of vehicles passed the scene of the accident in the minutes following the officers arriving on scene.[79] While the exact volume of traffic is not relevant generally, the jury could have reasonably inferred that the traffic pattern was similar mere minutes before when Appellant wrecked his vehicle, and that multiple motorists were "on the highway at the same time and place."[80] This would be a reasonable inference for the jury to draw, and the jury could conclude that Appellant placed those motorists and their passengers in actual danger.

When Appellant lost control of his truck, by hydroplaning or not, he by definition lost control of the direction his vehicle would go. The State highlighted this in closing arguments, arguing that the vehicle was capable of swerving the opposite direction, away from the concrete median and instead across the Interstate.[81] For that matter, Appellant may have been driving in any of the lanes of traffic, and may have lost control across one or more before he struck the median.

---

[78] *Williams*, 946 S.W.2d at 435.

[79] Court's Exhibit 1, showing over 140 vehicles passing the scene of the accident, and substantial slowing of traffic needing to avoid Appellant's car in the lane of traffic.

[80] *See Drichas*, 175 S.W.3d at 800.

[81] III R.R. 170.

Any vehicle on the northbound side of the Interstate was in actual danger when Appellant wrecked his truck. The amount of damage to Appellant's vehicle was apparent to the jury in both photographic and video evidence, including Appellant's bumper laying in the lane of traffic some distance from where his vehicle came to a rest, and would provide the jury with some indication of the force of impact.[82]

Further, this Court should consider the time Appellant left his truck stopped in the far left lane of traffic on Interstate 35, putting oncoming motorists in actual danger as a direct result of his reckless and dangerous driving. While Appellant put on his hazards at some point, there was no evidence that he made any attempt to remove his vehicle from the traffic lanes. The jury could have reasonably concluded that Appellant's reckless driving and failure to remove his vehicle from the lanes of traffic after spinning out put other drivers in actual danger, and that all of the oncoming vehicles in that lane would have necessarily needed to take evasive action from striking Appellant's vehicle.[83]

Appellant also put the responding officers Pena, Cochran, and McDonald in actual danger during the time that Appellant's vehicle remained facing southbound in the left hand lane of travel. Deputy Pena arrived shortly after the initial accident,

---

[82] State's Exhibits 6; Court's Exhibit 1 from 21:54:20 to 21:54:45, and at 21:58:45.

[83] While evasive action is not a necessary finding to uphold a deadly weapon finding, it may be considered. *Drichas*, 175 S.W.3d at 799.

and parked in such a way to alert oncoming drivers of the stopped vehicle in the far left lane.[84] When officers Cochran and McDonald arrived on scene shortly after, they also needed to park partly in the lane of traffic, and felt in danger being on the Interstate in such a situation.[85] Officer McDonald, the training officer on scene, was so concerned about the situation that he "immediately" called for the fire department to bring a unit out to block the lane and protect them from oncoming drivers.[86] The officers were particularly concerned because they knew from their experience that being in such a situation was inherently dangerous: specifically, Officer McDonald testified that a deputy constable had been injured previously under similar circumstances when that deputy's patrol vehicle was struck on Interstate 35 about a mile away from the location of the instant offense.[87] In light of this evidence, the jury could have reasonably concluded that Appellant's reckless and dangerous driving put the responding officers in actual danger by simply responding to the accident.[88]

---

[84] R.R. III:25.

[85] R.R. III:119.

[86] R.R. III:119.

[87] R.R. III:119-120.

[88] *See Drichas*, 175 S.W.3d at 798 (danger to responding officers may be considered in Deadly Weapon analysis); *but c.f. Williams*, 946 S.W.3d at 433 (testimony that defendant's stopping in a lane of traffic was "very hazardous" was not enough to sustain a deadly weapon finding because no other motorists were on the road for the duration of the offense or of the stop. In the instant case, as previously noticed, scores of vehicles can be seen passing Appellant's stopped vehicle in Court's Exhibit 1).

20

Viewed in the light most favorable to the Deadly Weapon finding, the evidence was sufficient for the jury to find that Appellant's vehicle was, in the manner of its use, a deadly weapon. Alleged point of error one should be denied.

## II. The trial court did not err in allowing testimony about a prior accident on Interstate 35, and even if error, the brief testimony to that end presented no reversible harm

### A. The trial court did not abuse its discretion in admitting testimony about a prior accident, as it was relevant to show the officer's actions and to support the Deadly Weapon Finding

*Standard of Review*

Under Texas Rule of Evidence 401, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. Juries are "entitled to know all relevant evidence surrounding facts and circumstances of the charged offense."[89] Indeed, the thrust of Texas Rules of Evidence 402 and 403 is to favor admissibility of evidence, and there is a presumption to that end.[90]

The admissibility of evidence is firmly within the sound discretion of the trial court and such decisions are not to be disturbed on appeal absent an abuse of discretion.[91] That is, admissibility of evidence is inherently a question for trial courts, and an appellate court should affirm a trial court's decision as long as it is within the "zone of reasonable disagreement."[92] An appellate court "cannot simply substitute its own decision for the trial court's" by conducting a de novo review,

---

[89] *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Cim. App. 2011).

[90] *Russo v. State*, 228 S.W.3d 779, 799 (Tex. App.—Austin 2007, pet. ref'd).

[91] *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

[92] *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

and should not conduct a wholly independent judgment of admissibility.[93] Reversal of a trial court decision regarding admissibility of evidence should be rare "and only after a clear abuse of discretion."[94]

*Analysis*

The trial court did not abuse its discretion in admitting the brief testimony of a prior accident on Interstate 35. As an initial matter, officers are generally permitted to testify as to the reason for their actions in an investigation. As detailed in Section I(C) *supra*, this testimony was presented in the by Officer McDonald to explain why he was concerned for the officer's safety on the scene, and why he immediately called for the fire department to provide some protection from and to oncoming motorists.[95]

The testimony was also probative as to the actual danger element of the deadly weapon finding Appellant was charged with. Appellant incorrectly characterizes this as "hypothetical or speculative testimony" that should not be used to support a finding of a deadly weapon.[96] To the contrary, the prior accident was an example of what the *hypothetical harm* was in the context of the *actual danger* in which Appellant placed others. By definition, "danger" implies that the

---

[93] *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

[94] *Id.*

[95] R.R. III:119-120.

[96] *Brief for Appellant* at 19.

threat of harm exists, without that harm necessarily being inflicted. The deadly weapon statute considers this, and does not require the State to show that actual serious bodily injury or death was inflicted, merely that a weapon was capable of inflicting such harm. To require a showing of actual danger without allowing the jury to consider what harm that danger references would be illogical. Nevertheless, Appellant is essentially requesting that this court modify long-standing deadly weapon jurisprudence by finding that anything short of actual harm is "hypothetical."

The bar against hypothetical danger is meant to prevent the jury from considering "what should have happened" were the facts were different from what they actually were if other individuals were not actually present to be in danger.[97] For example, courts have deleted deadly weapon findings when there were few if any other cars present and the defendant pulled over safely,[98] when *no* other vehicles were present when the defendant was driving below 10 miles per hour on an interstate and stopped without hitting anything,[99] and when no other motorists were on the freeway during a single-car accident and the nearest person was in a

---

[97] *Drichas*, 175 S.W.3d. at 799 (volume of traffic only relevant if *no* traffic was present, implying that any other motorist on the road would be satisfactory); *Mann*, 13 S.W.3d at 92 (noting that the "hypothetical potential for danger" is not sufficient for this element, but that such hypothetical potential was really only appropriate when others are not actually present when the defendant drove in a dangerous manner.).

[98] *Brister*, 449 S.W.3d at 495.

[99] *Williams*, 946 S.W.2d at 433-36.

building some sixty feet away.[100] In each of those fact patterns, any danger was "hypothetical" as there were no individuals present who could have been put in danger from the defendant's driving. In the instant case, the motorists on the freeway as well as the responding officers were in actual danger where any oncoming vehicle that night was *capable* of causing the kind of accident briefly described by Officer McDonald.[101]

## B. The trial court did not abuse its discretion in admitting the testimony under Texas Rule of Evidence 403

*Rule 403 Balancing Test*

Since all evidence tending to show guilt is prejudicial, a trial court must evaluate if the prejudice is "unfair," that is, the court examines if the evidence tends "to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[102] In close cases under this rule, there is a presumption favoring admissibility.[103] Rule 403 "gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness's testimony and its impact upon the jury, and to conduct the necessary

---

[100] *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010).

[101] *Drichas*, 175 S.W.3d at 800 (stating that capability to cause injury is the correct inquiry in the "actual danger" prong, not the probability of so doing).

[102] *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990), on reh'g (June 19, 1991) (*citing* Advisory Committee's Note to Fed.R.Evid. 403).

[103] *Johnson v. State*, 932 S.W.2d 296, 300 (Tex. App. —Austin 1996, pet. ref'd) (*citing Montgomery*, 810 S.W.2d at 377, 378).

balancing."[104] "The rule thus allows different trial judges to reach different conclusions in different trials on substantially similar facts without abuse of discretion."[105]

Texas Courts have developed a multi-factor balancing analysis which a trial court must apply, even if the factors blend together in practice.[106] Specifically, a trial court should balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.[107]

While an appellate court should also use this framework, review of a trial court's decision is still subject to an abuse of discretion standard detailed above.

---

[104] *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007).

[105] *Id.*

[106] *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2007); *see also*, *Keller v. State*, No. 03-13-00501-CR, 2014 Tex. App. LEXIS 12506 at *13-14 (Tex. App.—Austin Nov. 20, 2014, no pet.) (mem.op., not designated for publication) (not binding, but persuasive in that this Court quotes the *Gigliobianco* balancing factors as still authoritative in contrast to the *Montgomery* test on which Appellant relies).

[107] *Gigliobianco*, 210 S.W.3d at 641-642.

## Rule 403 Factors

1) As discussed Section II(A) *supra*, the testimony of a serious prior accident in similar conditions close to this location on the same Interstate was highly probative for the jury in considering a deadly weapon finding. The jury was entitled to consider the harm that threatened other passing motorists as well as the responding officers to the accident. This is particularly true because the testimony highlighted the fact that the patrol car in the prior accident—like the ones in the instant case—was stopped on the Interstate with their overhead lights on when it was struck by an oncoming vehicle. That a serious accident happened in such similar circumstances previously would illustrate just how actual the danger was to all parties involved.

2) As to the need for the evidence, the State carries the burden to prove Appellant guilty beyond a reasonable doubt at trial of all elements, including as to a deadly weapon. While most jurors would be aware that being stopped on Interstate 35 in a lane of traffic is inherently dangerous, they might not be aware of the reality of a continuing danger to responding officers even if their emergency overhead lights are activated. The best way to illustrate that actual danger was with a previous case where that threatened harm was realized. Therefore, the State

needed this testimony as support for the dangerousness of the situation beyond the officer's flat assertion that it was "very dangerous."[108]

3) The testimony was unlikely to suggest decision on an improper basis. No inflaming evidence was admitted, and the testimony about the prior accident was fairly clinical, only relaying that an officer had been sufficiently injured that he needed to be transported to the hospital. Such testimony would be relevant to the jury in deciding if a collision with a vehicle stopped on 35 would be capable of causing serious bodily injury or death as required by a deadly weapon finding. Further, the fact that it was a police officer in the prior accident would be no more inflammatory than the reality that police officers were in actual danger of similar injury in the instant case.

4) Neither was the testimony likely to confuse or distract the jury, as Officer McDonald was very clear that he was referring to a different accident. Further, no graphic details or photographs were presented to the jury. Instead, Officer McDonald simply relayed why he was concerned for his safety as well as the safety of Officer Cochran and Deputy Pena the evening of the instant offense.

5) The jury would also be unlikely to give this evidence undue weight in the instant case. They could not have inferred anything about Appellant's motivations from the testimony. Nor could the jury have inferred that such an injury was

---

[108] R.R. III:119.

inevitable, as a similar subsequent accident did not occur in the instant case, even if the danger of such an accident was present.

6) As to the length of the testimony, the officer responded to exactly one question, with only eight lines of testimony in the record following Appellant's objection at trial.[109] Over the course of a multi-day felony trial, such testimony cannot honestly be said to consume an inordinate amount of time, especially without the admission of any related exhibits.

No factor of the *Gigliobianco* analysis weighs against admission. Even if the Court found that the testimony might be given undue weight or that some other factor militated against admission, the probative value and brevity of testimony would weight strongly for admission. Therefore, the trial court did not abuse its discretion in admitting the testimony in question as it was limited, not likely to confuse or inflame, and was relevant to the deadly weapon finding.

## C. Even if admitting the testimony was error, it was harmless as it was limited, not inflammatory, and not emphasized by the State

*Standard of Review*

As Appellant admits, if this Court finds that the evidence in question was improperly admitted, the next step is to conduct a harmless error analysis. Since the improper admission of evidence is a non-constitutional error, any such error

---

[109] R.R. III:120.

"that does not affect substantial rights must be disregarded" on appeal.[110] Improperly admitted evidence does not affect a defendant's substantial rights "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect."[111] The court should consider everything in the record in conducting this analysis.[112] When the State does not emphasize the erroneously admitted evidence, the deleterious effect, if any, is minimized.[113]

### Harm Analysis

First, the testimony was not inflammatory. The testimony only briefly detailed that years before the instant offense, an unrelated drunk driver struck a deputy constable's car years ago on the same road, resulting in the officer being sent to the hospital.[114] It could hardly have surprised the jury that an accident on Interstate 35 could be dangerous, and the testimony did not provide any details that could shock or disturb a rational juror.

The testimony in question also consisted of the bare minimum the State needed to make the point for which it was admitted, taking up only eight lines of

---

[110] Tex. R. App. Proc. 44.2(b).

[111] *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (*quoting Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)); *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

[112] *Motilla*, 78 S.W.3d at 355.

[113] *King v. State*, 953 S.W.2d 226, 273 (Tex. Crim. App. 1997).

[114] R.R. III:120.

text in the record.[115] No testimony was provided regarding the kind of the injuries in that accident, nor was the officer involved called to the stand. No exhibits, photos, or video from that incident were submitted to the jury. The State did not even ask a follow-up question on the issue. Appellant admits that "the state did not emphasis [sic] the testimony in argument."[116] To be more exact, the evidence was never repeated or referenced again in any capacity by any witness or attorney in any examination or argument.

Instead, Appellant alleges that the State's response to Appellant's own objection stressed the evidence to the jury.[117] If Appellant's counsel did not want to highlight the testimony for the jury, he could have either glossed over it, or requested that the argument be conducted in a sidebar conversation. The fact that Appellant's counsel did not request a sidebar conference on the objection tends to show that, even with the ability to judge the climate of the trial at the time, he did not think that the discussion would be prejudicial to his client. The State is permitted to respond to objections, particularly when the theory of admissibility is determinative of the testimony's admission, and in this case did so in a succinct

---

[115] R.R. III:120.

[116] *Brief for Appellant* at 22.

[117] *Id.*

31

manner.[118] Even Appellant's counsel's own speaking objection would have clarified the issue to the jury, as he specifically argued that the testimony regarded an unrelated incident, and that it should have no real relevance.[119]

Given that the testimony in question was extremely short and was not stressed or ever addressed again, the record as a whole provides a fair assurance that the testimony had no effect on the jury. Therefore, even if this testimony was improperly admitted, it was harmless and does not provide a ground for reversal.

---

[118] III R.R. 119-120 "MR. SALINAS: Your Honor, it's going to the fact that we have alleged a deadly weapon in this offense, and it goes to the fact that a motor vehicle is capable of causing serious bodily injury or death."

[119] III R.R. 119-120 "MR. SAHUALLA: Once again, as we explored with the other officer, Judge, we need to talk about this case, not what has happened in any other case. That's not relevant and the danger of undue prejudice is too great to go into other cases that may have happened."

## PRAYER

Wherefore, the State respectfully requests that this Court affirm the conviction. Alternatively, if this Court finds that relief is warranted only under the first alleged point of error, the State respectfully requests that this Court only modify the judgment in this case by deleting the deadly weapon finding.

Respectfully submitted,

**Jana Duty**
District Attorney
Williamson County, Texas

/s/ Daniel Sakaida
Daniel Sakaida
State Bar No: 24084601
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas 78626
(512) 943-1234
(512) 943-1255 (fax)
daniel.sakaida@wilco.org

/s/ John C. Prezas
**John C. Prezas**
State Bar No: 24041722
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas 78626
(512) 943-1234
(512) 943-1255 (fax)
jprezas@wilco.org

## CERTIFICATE OF COMPLIANCE

I certify that, after allowable exclusions, the State's brief contains 8,708 words in compliance with Rule 9.4 of the Texas rules of Appellate Procedure.

_/s/ Daniel Sakaida_____
Daniel Sakaida

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2015, I electronically filed the foregoing document with the clerk of the court for the Texas Court of Criminal Appeals, using the efile.txcourts.gov system. Via that system, a "Notice of Electronic Filing" was sent to Appellee's appellate attorney of record, Ellic Sahualla, 600 W. 13th St., Austin, Texas 78701 at ellic@Sahuallalaw.com.

_/s/ Daniel Sakaida_____
DANIEL SAKAIDA

34