

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00283-CR

JOSE CIRO RODRIGUEZ, SR.                                                          APPELLANT

V.

THE STATE OF TEXAS                                                                          STATE

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1297707D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jose Ciro Rodriguez, Sr. appeals his first-degree-felony conviction for possessing and intending to deliver between four and two hundred grams of methamphetamine.[2] In one issue, he contends that the trial court erred by denying his motion to suppress evidence concerning the methamphetamine,

----

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (West 2017).

which the police discovered upon a search of his home. We hold that the trial court did not err by denying the motion to suppress, and we affirm the trial court's judgment.

## Background[3]

One evening in September 2012, Fort Worth police officer Matthew McMeans was working undercover, surveilling an Arlington house that he suspected had a connection to the delivery of illegal narcotics. Rodriguez left the house in a red Dodge truck; Officer McMeans followed him and saw him fail to use a turn signal before making a turn. Officer McMeans was in an unmarked car and could not pull Rodriguez over for that traffic violation, so he asked Damian Gary, an officer with the Arlington Police Department, to find and detain Rodriguez.

Officer Gary saw Rodriguez driving the truck; Rodriguez was speeding at more than twice the limit of forty miles per hour. Officer Gary conducted a traffic stop. When he walked toward Rodriguez's truck, which contained Rodriguez and his common-law wife Cynthia Garza, he smelled marijuana. Officer Gary and Rodriguez conversed in English.

Officer McMeans also arrived at the scene of the traffic stop and talked to Rodriguez in English. Neither of the officers pulled out guns during the stop. Rodriguez showed a relaxed demeanor. Officer McMeans asked Rodriguez

---

[3]The first part of this factual recitation comprises the testimonies of the State's witnesses. Rodriguez testified to different facts that we will detail below.

whether there were "any narcotics back at his home," and Rodriguez said there were. Officer McMeans then asked Rodriguez to sign a form to give the police consent to search the house for narcotics, and Rodriguez said that he would sign the form.

Officer McMeans gave a Spanish-language consent form to Rodriguez. In explaining why he gave Rodriguez the Spanish-language form, Officer McMeans later testified,

> Well, I -- a lot of times, when you're talking to . . . somebody who can speak Spanish and English, they'll say on the scene that they speak -- so I asked him, do you speak English, yes, or can you speak Spanish, he said he could, and I asked when I was giving him the consent form if he could read in Spanish and English, he said he could.
>
> I'll generally give them the Spanish version, just so later on -- because I've been in trial -- later on, historically, I've seen it happen where they've come back and said, I [did not] understand . . . .

Officer McMeans explained the form to Rodriguez and told Rodriguez that he could withdraw his consent at any time. Rodriguez never indicated that he could not understand the form, and he signed it. Translated to English, the form stated in part,

> Consent to search: I . . . have been informed by the officer, who has . . . served me with this document, that I have the right to refuse this officer or any other officer permission to conduct a search of my [house] . . . .
>
> I understand that if I do not give my consent . . . to search my property, my property cannot be searched by an officer of the State of Texas, unless he has a search warrant.

3

I understand that these rights are afforded to me under the Constitution of the State of Texas, as well as the Constitution of the United States. Nonetheless, I voluntarily waive . . . my right, and I give my consent to this officer . . . and any officer assisting him to conduct that search . . . of the property . . . .

. . . .

I have given my consent voluntarily, and this consent is not the product of any threat, promise, compulsion, or persuasion of any kind.

Officer McMeans and Rodriguez returned to Rodriguez's house. Rodriguez did not withdraw his consent for the search. After they entered the house, Officer McMeans asked Rodriguez where the drugs were, and Rodriguez pointed toward a television in the master bedroom. Inside a cigar box near the television, Officer McMeans found a baggie that contained methamphetamine[4] in an amount large enough to indicate Rodriguez's intent to deliver. In the same bedroom, Officer McMeans found a digital scale and several guns.

A grand jury indicted Rodriguez with possessing and intending to deliver between four and two hundred grams of methamphetamine. The indictment contained an allegation that he used or exhibited a firearm during the commission of the offense.

Rodriguez filed a motion to suppress evidence concerning the police's discovery of the methamphetamine, contending, in part, that the police had

---

[4]A forensic scientist testified that her test of the substance that Officer McMeans found in the cigar box showed that it was 156.21 grams of methamphetamine.

obtained the evidence while violating his federal and state constitutional rights. After Rodriguez pleaded not guilty, during a trial before a jury but outside the jury's presence, the trial court held a hearing on the motion to suppress.

During the hearing, Rodriguez, through an interpreter,[5] testified, among other facts, that on the September 2012 evening, he was not speeding when he was pulled over; that he had not understood what the officers were asking him concerning consent to search his house; and that although he had signed the consent form, he had not had time to read it and had not "pa[id] attention" to it because he was scared and nervous. Rodriguez also testified that the officers told him to sign the consent form or they would "take down the doors [to his] house."

The trial court denied the motion to suppress. On the record, the court found[6] that Officer Gary's stop of Rodriguez's truck was based on traffic violations and was lawful.[7] The court also found that Rodriguez gave the officers

---

[5]At one point during his testimony, Rodriguez, apparently understanding his counsel's questions in English, answered them without waiting for the interpreter to translate them. The trial court instructed him, "We have the benefit of an interpreter. . . . You have to wait for the question to be translated in Spanish. . . . I understand that you know English . . . ." At trial, Garza testified that Rodriguez speaks English "pretty well" and also speaks Spanish.

[6]Rodriguez did not request formal, written findings of fact and conclusions of law. We will consider the trial court's oral pronouncement of its ruling as including its factual findings supporting the ruling. *See State v. Varley*, 501 S.W.3d 273, 277 (Tex. App.—Fort Worth 2016, pet. ref'd) (mem. op).

[7]On appeal, Rodriguez does not contest this finding. In his statement of facts, he appears to concede that he committed traffic offenses.

consent to search his house, that his consent was "not obtained under coercion," and that the resulting search was constitutional. Finally, the court found that Officer McMeans's testimony was "far more credible . . . than the Defendant's witnesses, both the Defendant and Ms. Garza."

The jury heard the parties' evidence and arguments on the issue of Rodriguez's guilt and found him guilty. The jury also found that he had used or had exhibited a deadly weapon during the offense. The trial court assessed his punishment at sixteen years' confinement and imposed that sentence. He brought this appeal.

## The Trial Court's Suppression Ruling

In his only issue on appeal, Rodriguez argues that the trial court erred by denying his motion to suppress because (1) the trial court did not make a finding that the consent was voluntary, and (2) the State did "not show by clear and convincing evidence that [his] consent to search his home was voluntary."

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.

Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

7

**The trial court found that Rodriguez's consent was voluntary**

Rodriguez contends that "[t]hough it made other findings, the [trial] court did not make a finding that Rodriguez's consent to search was voluntary." He asserts that because the trial court "made no finding that the consent was voluntary," it "apparently was not." Considering the trial court's ruling in the context of the complete record, we disagree.

After the conclusion of the evidentiary portion of the hearing on Rodriguez's motion to suppress, his counsel argued that Rodriguez's consent to the search of his house was not voluntary. Responding to that argument, the trial court found that Rodriguez's "consent was not obtained under coercion" and that the search was "therefore" constitutional. We hold that these statements evidence the trial court's finding that Rodriguez's consent was voluntary. *See Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011) (explaining that the decisive question in a case in which the State relies on consent to justify a search is whether the consent was voluntary or coerced); *Martinez v. State*, 500 S.W.3d 456, 470 (Tex. App.—Beaumont 2016, pet. ref'd) (explaining that for a defendant's consent to be voluntary, the consent must not be coerced). We overrule his sole issue to the extent that he contends otherwise.

**The trial court's finding on voluntariness was not erroneous**

Next, Rodriguez argues that the trial court erred by denying his motion to suppress because the State "failed to show by clear and convincing evidence that [his] consent to search his home was voluntary." He contends that the

"scenario painted by [Officer McMeans] . . . showed that consent could not have been voluntary." More specifically, on appeal, he argues that the search of his house violated his rights under the Texas constitution.[8] The State argues that the search did not violate Rodriguez's rights because the record "supports the trial court's implicit finding that [his] consent to search his home was voluntary."

The Texas constitution protects against unreasonable searches and seizures. Tex. Const. art. I, § 9 ("The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches . . . ."). Generally, a search of a person's home is unconstitutional without a warrant supported by probable cause. *Ramirez v. State*, 105 S.W.3d 730, 742 (Tex. App.—Austin 2003, no pet.). But the State may justify a warrantless search under the Texas constitution by presenting clear and convincing evidence that a defendant voluntarily gave consent. *See Meekins*, 340 S.W.3d at 459; *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) ("Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause."); *see also Weller v. State*, 184 S.W.3d 787, 790 (Tex. App.—Beaumont 2006, no pet.) (stating that "clear and convincing evidence" is the "degree of proof that will produce in the mind of

---

[8]Rodriguez acknowledges that he raised federal and state constitutional complaints in the trial court, but he states that on appeal, he "does not pursue this issue under the Fourth Amendment" to the federal constitution. *See* U.S. Const. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .").

9

the trier of fact a firm belief or conviction about the truth of the allegations sought to be established").

The voluntariness of consent to a search is a question of fact to be determined from all the circumstances. *Meekins*, 340 S.W.3d at 458; *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) ("In determining whether a defendant's will was overborne in a particular case, the trial court must assess the totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence."). For consent to be voluntary and therefore valid, it must not be coerced by explicit or implicit means. *Carmouche*, 10 S.W.3d at 331.

Factors that may affect a court's determination of voluntariness of a defendant's consent include the length of the defendant's detention before giving consent; whether the defendant was physically mistreated; whether the police used violence or threats of violence; whether the police made promises or inducements; whether the police used deception or trickery; the physical and mental condition and capacity of the defendant; and whether the police told the defendant that he had a right to refuse consent. *Tucker*, 369 S.W.3d at 185; *Norton v. State*, No. 02-14-00074-CR, 2015 WL 4966998, at *4 (Tex. App.—Fort Worth Aug. 20, 2015, no pet.) (mem. op., not designated for publication). "Texas courts have decided numerous cases where the suspect's consent was deemed voluntary when the officers were in plain clothes and identified themselves as officers before requesting consent to search." *Black v. State,* No. 02-10-00157-

10

CR, 2011 WL 3672023, at *4 (Tex. App.—Fort Worth Aug. 18, 2011, no pet.) (mem. op., not designated for publication). When the record "supports a finding by clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding." *Carmouche*, 10 S.W.3d at 331.

In giving deference to the trial court's determination that Officer McMeans's testimony was credible and that the testimony of Rodriguez and Garza was less credible—*see Amador*, 221 S.W.3d at 673—we cannot conclude that the court erred by finding that the search was constitutional based on Rodriguez's voluntary consent. Officer McMeans testified that after Rodriguez told him that he had narcotics at his home, Rodriguez, with a relaxed demeanor, consented to a search of the home. He also testified that he never drew his weapon during his interaction with Rodriguez and that he never threatened Rodriguez. Officer McMeans testified that Rodriguez had agreed to sign the consent-to-search form, that he had explained the form to Rodriguez, and that Rodriguez had affirmatively indicated that he understood what he was signing. Officer McMeans further testified that he had informed Rodriguez that he could withdraw consent at any time but that Rodriguez never did so. Officer McMeans's testimony does not show that he made promises that induced the consent or that he engaged in deception or trickery, nor does it show that Rodriguez had a physical or mental condition affecting the voluntariness of his consent. These facts that are drawn from Officer McMeans's testimony support the trial court's finding on voluntariness. *See Tucker*, 369 S.W.3d at 185; *Norton*, 2015 WL 4966998, at *4.

11

Rodriguez appears to contend that his consent was involuntary because while he had talked with Officer McMeans in English, Officer McMeans gave him a Spanish-language consent form. But Officer McMeans testified that Rodriguez told him that he could speak and read in Spanish. Given this testimony and given other circumstances presented by the record, including Rodriguez's use of a Spanish-language interpreter at trial, the trial court could have reasonably found that Rodriguez had the ability to understand the form and that his signature on the form was consensual.

Rodriguez also argues that Officer McMeans's testimony that Rodriguez admitted to possessing drugs in the house and voluntarily gave Officer McMeans consent to search for them is "too fanciful to believe." As explained above, however, the trial court was the sole judge of the witnesses' credibility. *See Wiede*, 214 S.W.3d at 24–25. We decline to second-guess the trial court's acceptance of Officer McMeans's testimony and its rejection of contradicting testimony offered by Rodriguez and Garza. *See id.*; *see also McCowan v. State*, Nos. 02-12-00156-CR, 02-12-00157-CR, 2013 WL 4028186, at *2 (Tex. App.—Fort Worth Aug. 8, 2013, no pet.) (mem. op., not designated for publication) ("[T]he trial court was uniquely positioned to determine the credibility of the witnesses. We will not second guess these determinations.").

Giving deference to the trial court's expressed credibility determinations and considering all of the facts revealed by the record, we cannot conclude that the trial court erred by finding that Rodriguez voluntarily gave consent to the

search of his house and by denying his motion to suppress. *See Meekins*, 340 S.W.3d at 458; *Amador*, 221 S.W.3d at 673; *Montanez*, 195 S.W.3d at 108–09. We overrule the remainder of his only issue.

**Conclusion**

Having overruled Rodriguez's sole issue, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL: WALKER, MEIER, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 24, 2018